GUADALUPE DANZOT, Plaintiff-Appellant, v. DENA ZABILKA, as Special Adm'r of the Estate of Johnnie Nunn, Deceased, Defendant-Appellee.

First District (4th Division)    No. 1—02—2723

Opinion filed July 31, 2003.—Rehearing denied September 11, 2003.

Law Offices of Meyer & Blumenshine, of Chicago (Scott A. Blumenshine, of counsel), for appellant.

Thomas L. Burdelik & Associates, of Chicago (Matthew E. Luecke, of counsel), for appellee.

JUSTICE GREIMAN delivered the opinion of the court:

Plaintiff, Guadalupe Danzot, appeals from the trial court's order granting summary judgment in favor of defendant as well as its previous sanction order, barring plaintiff from presenting any evidence or testimony at trial for her alleged bad-faith participation in arbitration, which served as the basis for the summary judgment.

The factual background of this case is as follows. On February 26, 2001, plaintiff filed suit against Johnnie Nunn (Nunn), alleging that his negligent driving caused an auto collision, nearly two years prior, that resulted in her injuries. Nunn was deceased at the time the action was filed; therefore, upon plaintiff's motion, the trial court appointed Dena Zabilka (defendant) as special administrator of Nunn's estate for the purpose of the litigation.

The trial court mandated the case to arbitration, further ordering that discovery would be closed on January 11, 2002. Plaintiff timely

submitted answers to defendant's request for interrogatories. In addition, plaintiff timely submitted an evidence package in accordance with Supreme Court Rule 90(c) (134 Ill. 2d R. 90(c)) to both defendant and the arbitration panel. In her discovery responses, plaintiff identified potential witnesses—including Antonio and Erma Guzman (the Guzmans), who purportedly had observed the accident.

■ The arbitration hearing was held on April 10, 2002. While the record does not contain a transcript of the hearing, the parties do not dispute the following facts. At the hearing, defendant objected to the tendering of testimony by plaintiff and her husband, asserting that the testimony was prohibited by the Dead-Man's Act, which provides in relevant part:

> "In the trial of any action in which any party sues or defends as the representative of a deceased person or person under a legal disability, no adverse party or person directly interested in the action shall be allowed to testify on his or her own behalf to any conversation with the deceased or person under legal disability or to any event which took place in the presence of the deceased or person under legal disability ***." 735 ILCS 5/8—201 (West 2002).

The arbitration panel rejected defendant's argument and permitted plaintiff to present the disputed testimony. Relying on that testimony, as well as the evidence in her Rule 90(c) package, plaintiff elected not to call other witnesses. At the conclusion of the approximately 90-minute hearing, the arbitrators signed a unanimous award, in the amount of $30,000, in favor of plaintiff. The award of the arbitrators contained no finding of bad-faith participation on the part of either party.

On May 1, 2002, defendant filed a notice of rejection of the award. Defendant further filed a motion for sanctions, entitled "Motion to Debar," citing Rule 91(b) (145 Ill. 2d R. 91(b)) and requesting sanctions for plaintiff's alleged bad-faith participation at the arbitration. On June 18, 2002, the trial court granted defendant's motion and ordered plaintiff "barred from presenting evidence or testifying at trial pursuant to Rule 91(b)." Plaintiff filed a motion to reconsider, which the trial court denied after a hearing on August 12, 2002.

Defendant filed a motion for summary judgment, arguing that no material issue of fact remained in the case because plaintiff was unable to present any evidence in support of her claim. On August 27, 2002, the trial court granted defendant's motion on the grounds suggested in defendant's motion. Plaintiff filed a timely notice of appeal, arguing that the trial court erred, first, by barring plaintiff from testifying or presenting evidence at trial and then, later, by granting summary judgment in favor of defendant on the basis of that sanction. We agree with plaintiff for the reasons that follow.

We address the sanction order first because it serves as the foundation for the summary judgment. Defendant has taken the position throughout this case that, by calling at the arbitration hearing only those witnesses whose testimony defendant claims would be barred by the Dead-Man's Act—and, more specifically, by not calling the Guzmans—plaintiff acted in a manner other than she would at trial, and as a consequence, she violated Rule 91(b), which commands a party's "good-faith participation." Plaintiff contends, however, that her behavior at the arbitration hearing in no way indicated bad faith but, rather, good faith, as the record reflects that she complied with the trial court's discovery order, presented an evidence package, offered witness testimony, and was unanimously awarded the maximum benefit by the panel. She further argues that the trial court was without authority to issue sanctions for her failure to call certain witnesses—which was merely part of her litigation strategy. Finally, she notes that the Dead-Man's Act would have affected only portions, but not all, of the testimony in dispute and would not require the complete barring of plaintiff and her husband as witnesses.

Rule 91(b) provides that all parties ordered to mandatory arbitration "must participate in the hearing in good faith and in a meaningful manner." 145 Ill. 2d R. 91(b). Upon petition, the trial court may sanction a party whom it finds has not participated in good faith at the arbitration hearing. 145 Ill. 2d R. 91(b). These sanctions are available through Rule 219(c), which provides a remedy for a party's unreasonable failure to comply with any order or rule regarding discovery, request for admission, or pretrial procedure issued by the court. 145 Ill. 2d R. 91(b); 166 Ill. 2d R. 219(c). Rule 91(b) was adopted in response to arbitrators' complaints that some parties and lawyers would merely attend, but refuse to participate in, arbitration. 145 Ill. 2d R. 91(b), Committee Comments. By providing for sanctions for violations of "good-faith participation," the rule is intended to discourage such misconduct and "assure the integrity of the arbitration process." 145 Ill. 2d R. 91(b), Committee Comments. A trial court's imposition of sanctions under Rule 91 will be reversed only where the decision is arbitrary or exceeds the bounds of reason, thus constituting an abuse of discretion. See *State Farm Insurance Co. v. Harmon*, 335 Ill. App. 3d 687, 690 (2002); *State Farm Insurance Co. v. Rodrigues*, 324 Ill. App. 3d 736, 740 (2001).

A party demonstrates bad faith when its conduct amounts to a deliberate and pronounced disregard for the rules and the court. *Harmon*, 335 Ill. App. 3d at 690. As previously mentioned, defendant argues in this case that plaintiff's failure to present the testimony of "disinterested" witnesses violated the Dead-Man's Act and was

tantamount to bad faith under Rule 91(b). At the hearing on plaintiff's motion to reconsider, defendant made the following argument:

"There's two witnesses by way of their answers to interrogatories. They are Irma Gusman [*sic*] and Antonio Nicholas Gusman [*sic*]. Those are two individuals that the plaintiff named on their own answers to interrogatories. The whole issue when we had the hearing on the motion to bar their testimony at trial was that they brought just the husband, and my associate at the arbitration brought the case law of Dead Man's Act addressing the fact that a husband cannot testify because he's interested. A husband cannot testify on behalf of the plaintiff wife. So the arbitrators are wrong in allowing this testimony, and that's why I brought the motion.

\* \* \*

Here they have two witnesses that they knew about as of November 5th of 2001, well before the arbitration hearing. They chose not to have these individuals testify at the arbitration either by way of live or by way of a 90c package affidavit."

The trial court evidently agreed with defendant's argument, stating the following:

"I cannot in any way suggest to you that what I'm attempting to do here is correct something that [the arbitrators] do wrong. I believe as a practical matter that their interpretation of the Dead Man's Act was incorrect, but that is beside the point. I believe under the circumstances of the requirements of a negligence case being duty, breach, proximate cause and damages, you know going into this that you have a tremendous problem with a dead man situation, and you have an answer to that problem alleviated because you indicate to counsel here that you have two witnesses that can circumvent that.

\* \* \*

So that was the reason, under the circumstances, that I barred him, because I believe that preparation was not appropriate, and, therefore, the participation at arbitration did not meet the proper standards when you had these witnesses available to you and you didn't call them."

■ Considering the language and purpose of Rules 91(b) and 219(c), it is unreasonable for the trial court to have issued sanctions where there has been no breach of a court rule or order on the part of plaintiff. The record reveals that plaintiff complied with the court's discovery order and the rules governing pretrial procedure by timely submitting both her responses to interrogatories and a Rule 90(c) evidence package. At the time of the arbitration hearing, the trial court had not made any evidentiary ruling regarding the Dead-Man's

Act, nor had it otherwise issued an order restricting plaintiff from presenting her own testimony or that of her husband. As there had been no conduct that would implicate Rules 91(b) and 219(c), it was arbitrary for the trial court to impose sanctions under those rules.

Even if Rules 91(b) and 219(c) did not require the breach of a rule or order and contemplated the issuance of sanctions for generalized "bad faith" conduct, the trial court's order would not survive scrutiny under the analysis traditionally employed by the courts when assessing the propriety of issuing a sanction. Such analysis requires consideration of the following: (1) the surprise to the adverse party; (2) the prejudicial effect of the proffered testimony or evidence; (3) the nature of the testimony or evidence; (4) the diligence of the adverse party in seeking discovery; (5) the timeliness of the adverse party in seeking discovery; and (6) the good faith of the party offering the testimony or evidence. *King v. Clay*, 335 Ill. App. 3d 923, 927 (2002), citing *Shimanovsky v. General Motors Corp.*, 181 Ill. 2d 112, 124 (1998).

Considering the aforementioned factors in light of the circumstances in this case, it is clear that the trial court's issuance of the sanction debarring plaintiff from presenting testimony and evidence was an abuse of discretion. It is axiomatic that plaintiff's counsel was entitled to make decisions regarding which witnesses to call as a matter of trial strategy. Plaintiff was under no obligation to subpoena each potential witness named in her own discovery responses. The onus was on defendant to issue the subpoenas for the Guzmans, if their testimony was essential to the adversarial testing at the hearing. See *Rodrigues*, 324 Ill. App. 3d at 742; *Harmon*, 335 Ill. App. 3d at 692 (a party who fails to properly secure the evidence bears the responsibility for any alleged insufficiency in the adversarial testing.) Thus, defendant cannot claim surprise or prejudice from plaintiff's failure to call the Guzmans where their presence, or at least their statements, could have been secured through defendant's own diligence.

Finally, it is significant that "[t]he purpose of the Dead Man's Act is to bar *only* that evidence which the defendant could have refuted." (Emphasis added.) *Rerack v. Lally*, 241 Ill. App. 3d 692, 695 (1992). The Act does not wholly prohibit the testimony of the person who interacted with the decedent, or that person's spouse, but rather prevents them from testifying as to any conversation with the decedent or to any "event" which took place in the decedent's presence. *Rerack*, 241 Ill. App. 3d at 695.

In *Rerack*, this court considered the application of the Dead-Man's Act in a negligence action arising from an auto collision. The *Rerack*

court determined that, despite the fact that the defendant was deceased, the Dead-Man's Act did not render the plaintiff incompetent to testify as to the following facts: the overall mechanical condition of the plaintiff's car, specifically the functioning of its brake lights; the weather conditions at the time of the accident; that the plaintiff's vehicle was stopped for two minutes; that the plaintiff's foot was on the brake pedal of his car continuously; that the plaintiff heard no sound prior to the accident's impact; and that the plaintiff observed damage to the rear of his vehicle the day after the occurrence. *Rerack*, 241 Ill. App. 3d at 696. Similarly, in the instant case involving an auto collision, the Dead-Man's Act would not bar plaintiff and her husband from testifying as to similar facts and would not require a complete prohibition of their testimony at trial.

■ In sum, the record in this case reveals that plaintiff met her burden of subjecting the case to the type of adversarial testing expected at trial by submitting a Rule 90(c) evidence package and appearing at the arbitration hearing prepared to argue her case. As discussed above, she did not violate any court order or rule by presenting the disputed testimony, nor did her failure to call the Guzmans reflect "a deliberate, contumacious or unwarranted disregard of the court's authority" which would warrant the issuance of a sanction as drastic as barring plaintiff from testifying or presenting evidence. See *King*, 335 Ill. App. 3d at 928. Despite the trial court's declaration that it was not seeking to overturn the judgment of the arbitrators, it indeed did just that. The trial court's issuance of what was, in effect, a dismissal of plaintiff's case served to defeat the very purpose of Rule 91(b) itself—to preserve the integrity of the arbitration system. As such, the trial court's order debarring plaintiff from presenting evidence was arbitrary and a clear abuse of discretion.

Next, in reviewing the trial court's order granting summary judgment, we again find error. This panel has addressed essentially the same issue recently in *King v. Clay*, 335 Ill. App. 3d 923 (2002), holding that summary judgment was inappropriate where such was based exclusively on a sanction order, entered erroneously, which prevented the plaintiff from presenting evidence. *King*, 335 Ill. App. 3d at 929.

In *King*, just as in the instant case, the defendant presented the trial court with a motion for summary judgment that relied exclusively on a previously imposed sanction that prevented the plaintiffs from testifying or presenting evidence at trial. In considering the motion, the trial court found that, because the plaintiffs could not present any evidence, no issue of material fact existed and the defendant was entitled to summary judgment. *King*, 335 Ill. App. 3d at 929. On appeal, this panel reversed the trial court, holding: (1) that the trial

court's issuance of the "drastic" sanction, which essentially dismissed the plaintiffs' claims, was an abuse of discretion; and (2) that, because the order for summary judgment was based exclusively on the erroneous sanction, it was also erroneous. *King*, 335 Ill. App. 3d at 928-29. Though the conduct considered in *King*—an alleged failure to make witnesses available for depositions—is different from the conduct considered in this case, neither constitutes "a deliberate, contumacious or unwarranted disregard of the court's authority," which would invoke the harsh sanction of barring the presentation of testimony and evidence. *King*, 335 Ill. App. 3d at 928. In accordance with our holding in *King*, we find that the trial court erred in granting summary judgment in this case.

In sum, we hold that the trial court erred: (1) by barring plaintiff from testifying or presenting evidence at trial as a sanction for her alleged lack of good faith during arbitration, where plaintiff neither violated a court order or rule, nor otherwise demonstrated bad faith at the arbitration hearing; and (2) by granting summary judgment in favor of defendant solely on the basis of the erroneous sanction order. Therefore, this case is reversed and remanded for further proceedings.

Reversed and remanded.

THEIS, P.J., and HARTMAN, J., concur.