# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Rosen v. The Larkin Center, Inc.*, 2012 IL App (2d) 120589

---

| | |
|---|---|
| Appellate Court Caption | DONALD ROSEN, Plaintiff-Appellant, v. THE LARKIN CENTER, INC., and DENNIS GRAF, Defendants-Appellees. |
| District & No. | Second District<br>Docket No. 2-12-0589 |
| Filed | December 28, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from plaintiff's termination from his position as chief financial officer of defendant school, the trial court's orders barring plaintiff from testifying as a discovery sanction and ultimately denying him leave to file an amended complaint and entering summary judgment for defendants were upheld, since plaintiff disregarded court rules, orders, and deadlines and his proposed amendment was untimely and would have prejudiced defendants. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 08-L-552; the Hon. Kevin T. Busch and the Hon. James R. Murphy, Judges, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Donald P. Rosen, of Carpentersville, appellant *pro se*.

Michael Resis and Ellen L. Green, both of SmithAmundsen LLC, of Chicago, and Jeffrey A. Risch and Rebecca L. Dobbs, both of SmithAmundsen LLC, of St. Charles, for appellees.

Panel

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.

Justices Hutchinson and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1       Plaintiff, Donald Rosen, appeals two trial court orders that contributed to the grant of summary judgment in favor of defendants, The Larkin Center, Inc., and Dennis Graf[1]; Larkin is an agency that provides special education and care to students through its therapeutic day school. Those orders that plaintiff appeals are: (1) the discovery sanction barring plaintiff from testifying; and (2) the denial of plaintiff's motion for leave to file an amended complaint. We affirm.

¶ 2                                          I. BACKGROUND

¶ 3       The present litigation arose after defendant terminated plaintiff from his position as chief financial officer (CFO). One of the functions of the CFO was to negotiate funding rates on behalf of Larkin with various state agencies. On September 23, 2008, plaintiff filed a complaint against defendant, alleging the following facts. Graf, chief executive officer of Larkin, hired plaintiff in January 2001, to act as CFO for Larkin. In April 2003, plaintiff became a licensed attorney. According to the complaint, Graf orally retained plaintiff to provide legal services to Larkin, which plaintiff provided. Plaintiff sought payment for those legal services in the amount of $94,125. Count I of the complaint alleged breach of contract, claiming that defendant breached its oral contract with plaintiff by failing to pay him for his legal services. Count II of the complaint alleged *quantum meruit*, claiming that plaintiff spent significant time as an attorney working for defendant's benefit. The complaint alleged that defendant enjoyed the benefits of plaintiff's services by receiving state funds and that plaintiff was owed fair and reasonable value for his services. Plaintiff attached numerous invoices on letterhead for "The Law Office of Donald Rosen."

¶ 4       On February 5, 2009, plaintiff moved for leave to file an amended complaint, requesting to add a third count, alleging a statutory claim for recovery from illegal gambling conducted

---

[1]We refer to both defendants in the singular for purposes of this opinion.

by defendant. This motion was denied for reasons stated on the record.[2] Meanwhile, defendant sought to quash a subpoena issued for a deposition of a Larkin employee and overly broad document requests. The court ordered the parties to move forward on the deposition, but it also ordered plaintiff to issue new document requests that were more specific. A flurry of discovery motions and alleged violations of discovery rules went back and forth for several months.

¶ 5 On January 14, 2010, the court ordered plaintiff to tender all outstanding discovery answers to defendant within 14 days, and it noted that it would consider sanctions if plaintiff failed to comply. On February 4, 2010, defendant filed a motion for sanctions pursuant to Illinois Supreme Court Rule 219(c) (eff. July 1, 2002) and for dismissal with prejudice for want of prosecution, alleging that plaintiff failed to answer interrogatories served upon him in September 2009. Defendant alleged in its motion that: the discovery was initially due on October 27, 2009; it made reasonable attempts by written correspondence to obtain answers from plaintiff; on November 16, 2009, and January 4, 2010, it sent plaintiff correspondence pursuant to Illinois Supreme Court Rule 201(k) (eff. July 1, 2002); the trial court entered the January 14 order advising plaintiff that discovery was due by January 28; and plaintiff had not yet tendered any responses.

¶ 6 On March 10, 2010, the court denied defendant's motion to dismiss for want of prosecution; reserved the issues related to defendant's motion for sanctions; and ordered both parties to file within 21 days any motion seeking to compel discovery or seeking rulings on any discovery matter. It further ordered that it would hear all motions regarding written discovery on April 28. Defendant filed a motion for sanctions by March 31. On April 6, plaintiff filed a motion to compel defendant to comply with his discovery request.

¶ 7 On May 26, 2010, after another flurry of discovery-related motions by both parties, the court entered an order stating that it would continue to reserve the issues related to defendant's motion for sanctions. It further ordered plaintiff to tender answers to defendant's interrogatories within 14 days and both parties to conduct an in-person Rule 201(k) conference within 30 days to address all outstanding discovery issues. The court continued the case to July 21. On that day, the court ordered defendant to produce documents related to plaintiff's job description and his termination by July 28 and continued the matter.

¶ 8 On August 18, 2010, defendant again filed a motion to compel discovery and for sanctions. It alleged that, following the court-ordered Rule 201(k) conference, plaintiff agreed to produce certain documents and then failed to do so. Further, defendant argued that the documents that plaintiff tendered were incomplete. The parties continued to file additional motions to compel, resulting in a court order on October 6, 2010. On that date, the court ordered plaintiff to produce certain documents and denied plaintiff's motion to compel certain documents pertaining to his termination, stating that the basis for producing those documents was not within the scope of the matters at issue in the complaint. However, the court ordered defendant to produce certain documents and information as requested by plaintiff.

---

[2]The record on appeal does not contain reports of proceedings.

¶ 9    On November 23, 2010, after more motions were filed by both parties, the trial court ordered the parties to finalize written discovery and conduct party depositions. It set the matter for a status hearing on February 22, 2011. On March 16, 2011, defendant again moved for sanctions and dismissal. Defendant argued that plaintiff most recently violated discovery rules by failing to appear for his scheduled deposition. Plaintiff's deposition was scheduled for February 16, 2011, and he was properly notified. Defendant never received any notice or communication from plaintiff regarding his failure to communicate, his absence from the scheduled deposition, or dates to reschedule. On April 7, 2011, the trial court entered an order that stated as follows: (1) defendant's motion for sanctions and to dismiss for want of prosecution was granted in part and denied in part; (2) defendant's request for dismissal was denied, but plaintiff was barred from testifying in the matter; (3) defendant was granted leave to file a petition for costs and attorney fees related to preparing for and attending plaintiff's scheduled deposition on February 16, 2011, and related to the filing of defendant's most recent motion for sanctions; and (4) the matter was continued to April 26, 2011. It does not appear from the record that plaintiff was present for the April 7 hearing.

¶ 10    On April 20, 2011, defendant filed its petition for costs and attorney fees, seeking $6,956.52 related to plaintiff's refusal to cooperate and appear for his deposition. A group exhibit was filed to support the fees, but the exhibit was excluded from the public court file due to the confidential nature of the documents. As such, it is not contained in the record on appeal. On April 26, plaintiff filed a motion to vacate the April 7 order, arguing that his 80-year-old mother's knee collapsed the week before the April 7 hearing. Plaintiff's mother was scheduled for surgery on April 27, and plaintiff went to Arizona to care for her. Plaintiff attached his airline reservations, which showed that his flight left Chicago on April 2 but included no information related to when plaintiff returned.

¶ 11    On June 2, 2011, the court ordered that plaintiff would be permitted to testify upon payment of the fees and costs prayed for in defendant's petition. The court stated that, if the fees and costs were not paid within 60 days, plaintiff's motion to vacate the April 7 order would be denied. The matter was continued. Plaintiff appealed the April 7 order, but on August 15, 2011, this court granted defendant's motion to dismiss the appeal. On October 25, 2011, the trial court noted that this court dismissed plaintiff's appeal and that plaintiff did not pay defendant's fees and costs within 60 days and therefore plaintiff was barred from testifying.

¶ 12    On December 28, 2011, defendant moved for summary judgment, alleging the following. Plaintiff's duties as CFO included negotiating funding rates with the Illinois Department of Children and Family Services and the Illinois State Board of Education. This duty was part of plaintiff's employment before he became a licensed attorney. Defendant argued that plaintiff now sought compensation for legal services, above and beyond his annual salary, despite never having submitted an invoice for legal services. Plaintiff's basis for recovery was an alleged oral contract, which defendant denied ever existed. Defendant argued that plaintiff had no evidence supporting his allegation and that the Larkin employee handbook refuted plaintiff's claim because it stated that any employment agreement will not be enforceable unless the agreement is in writing and signed by the executive director. Defendant also submitted correspondence from plaintiff in which plaintiff stated that the

parties had agreed that, "in lieu of additional compensation for this legal representation, [plaintiff] would instead be allowed to take time as [plaintiff] needed, during the day, to solicit and service [his] legal clients to build up a private law practice." Defendant argued that the undisputed evidence demonstrated that plaintiff agreed to perform some legal services for Larkin as part of his employment as CFO and that in exchange he was allowed to pursue his private practice during the day, as needed. Defendant argued that there was no evidence suggesting that Larkin would be invoiced separately. Further, past CFOs also negotiated funding rates with state agencies as part of their job duties. Therefore, defendant argued, the undisputed evidence established that plaintiff was fully compensated through his annual salary for all of the services that he rendered, including negotiating funding rates. Defendant attached supporting documents to its motion, including Graf's deposition and affidavits from prior Larkin CFOs and Larkin's human resources director.

¶ 13        On March 22, 2012, plaintiff filed a motion for leave to amend his complaint, pursuant to section 2-616(c) of the Code of Civil Procedure (Code) (735 ILCS 5/2-616(c) (West 2010)), seeking to add count III, a claim for wrongful termination due to breach of contract, and count IV, a claim for promissory estoppel. According to the motion, the admissions included in defendant's pending motion for summary judgment contained proof of his wrongful-termination claim. Plaintiff alleged that defendant acknowledged that there was a contract between the parties regarding plaintiff's legal services to defendant in that defendant admitted that plaintiff was allowed to take time as needed to build up his private practice while still performing as Larkin's CFO and receiving a full-time salary. Plaintiff acknowledged in his motion that, because the complaint did not allege wrongful termination, defendant refused to allow Graf to answer questions regarding plaintiff's termination. Defendant opposed plaintiff's motion, arguing that the proposed claims did not cure his pleadings and were merely a disingenuous attempt to delay the court's ruling on the motion for summary judgment. Defendant argued that plaintiff failed to establish that there was any valid contract between the parties, and therefore a wrongful-termination claim was futile given the law of employment-at-will. Further, defendant argued that it would be prejudiced if plaintiff were now allowed to add the wrongful-termination claim, four years after the original complaint was filed and after years of virulent litigation. Plaintiff had prior notice that discovery was not being conducted for employment-related claims, but he had not previously chosen to add the claims. Plaintiff had numerous opportunities to amend his complaint and had attempted to amend it once already, and therefore his motion was untimely.

¶ 14        On April 26, 2012, the trial court granted defendant's motion for summary judgment, "for the reasons stated in the record." It also denied plaintiff's motion for leave to amend the complaint, "for reasons stated in the record and in agreement with the reasons stated in defendant's response brief." Plaintiff timely appealed, arguing that the trial court erred in barring him from testifying where he missed one deposition appointment and in denying his motion for leave to amend his complaint.

¶ 15                                    II. ANALYSIS

¶ 16      We first address plaintiff's argument that the trial court abused its discretion in sanctioning him pursuant to Rule 219(c) by barring his testimony. Rule 219(c) provides that, if any party unreasonably fails to comply with discovery rules, the court, upon motion, may enter remedial orders, including barring a witness from testifying. Ill. S. Ct. R. 219(c) (eff. July 1, 2002). Additionally, the court may order the offending party to pay the other party reasonable expenses incurred as a result of the misconduct, including a reasonable attorney fee. *Id.* Rule 219(c) provides that the trial court shall set forth with specificity the reasons and basis for any sanction either in the judgment order itself or in a separate written order. *Id.*[3] The decision to impose a particular sanction is within the discretion of the trial court, and therefore only a clear abuse of discretion will justify a reversal. *Shimanovsky v. General Motors Corp.*, 181 Ill. 2d 112, 120 (1998).

¶ 17      The purpose in imposing sanctions is to coerce compliance with discovery rules and orders, not to punish the offending party. *Id.* at 123. A sanction ordering dismissal or that results in a default judgment is a drastic one to be invoked only in those cases where the party's actions "show a deliberate, contumacious or unwarranted disregard of the court's authority." *Id.* In determining whether a trial court abused its discretion in imposing a particular sanction, this court must look to the criteria upon which the trial court relied in making its determination of an appropriate sanction. *Id.* The factors a trial court is to use in determining a sanction include: "(1) the surprise to the adverse party; (2) the prejudicial effect of the proffered testimony or evidence; (3) the nature of the testimony or evidence; (4) the diligence of the adverse party in seeking discovery; (5) the timeliness of the adverse party's objection to the testimony or evidence; and (6) the good faith of the party offering the testimony or evidence." *Id.* at 124. No single factor in this list is determinative. *Id.*

¶ 18      Barring a witness from testifying is a drastic sanction, especially when that witness is the party's only witness, and such a sanction should be imposed sparingly. *Palmer v. Minor*, 211 Ill. App. 3d 1083, 1086 (1991). However, such a sanction has been upheld where the party's conduct has been contumacious. *Id.* at 1087. In *Palmer*, the plaintiff failed to disclose a witness until the day of an auto negligence trial, after the trial court had barred testimony from two other witnesses for various reasons. *Id.* at 1084. The witness was the plaintiff's live-in girlfriend whom he knew had witnessed the accident. *Id.* at 1084-85. The defense moved to bar the witness from testifying pursuant to Rule 219(c) and argued that the

_____

[3]While the written order in the common-law record does not set forth the court's specific reasons for sanctioning plaintiff, reviewing courts have relaxed that requirement in cases where sanctions were entered pursuant to written motions, because it is assumed that the reasons for the sanction were those set out in the motions. See *Illinois Emcasco Insurance Co. v. Nationwide Mutual Insurance Co.*, 393 Ill. App. 3d 782, 790 (2009). Here, defendant filed a written motion. Further, neither party raises this issue, which results in forfeiture. *Vancura v. Katris*, 238 Ill. 2d 352, 369-70 (2010). Additionally, plaintiff has failed to submit reports of proceedings, which might have contained the court's reasoning, and any doubts arising from the incompleteness of the record are construed against him. See *Law Offices of Nye & Associates, Ltd. v. Boado*, 2012 IL App (2d) 110804, ¶ 23 (citing *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984)).

plaintiff's conduct was a gross violation of supreme court rules because he never disclosed the witness and did not even mention the witness during his deposition. *Id.* at 1085. The trial court agreed and imposed the sanction on the plaintiff, barring the witness's testimony. *Id.* The appellate court affirmed, stating that the plaintiff lived with the witness, the witness was the mother of his child, and he knew that she witnessed the auto accident, yet the plaintiff never disclosed the witness's name in an interrogatory or in his deposition. *Id.* at 1086. The plaintiff explained only that the witness was a " 'spare.' " *Id.* at 1086-87. The appellate court acknowledged that barring the plaintiff's only witness was a drastic sanction but determined that it was an appropriate one where the plaintiff's conduct grossly violated the rules. *Id.* at 1087.

¶ 19        Similarly, in *Dolan v. O'Callaghan*, 2012 IL App (1st) 111505, ¶ 1, the defendant refused to answer certain questions at his deposition and the trial court sanctioned him by requiring him to pay the attorney fees incurred in connection with preparing the motion for sanctions. The plaintiff alleged that she worked for the defendant as an associate attorney and that the plaintiff agreed to accept a percentage of all fees in lieu of a salary. *Id.* ¶ 5. The plaintiff alleged that the defendant ultimately breached that agreement. *Id.* After months of antagonistic discovery, the defendant was ordered to resume and complete his deposition so he could be questioned about several topics. *Id.* ¶ 10. Eventually, the plaintiff moved for sanctions after the defendant refused to answer certain questions. *Id.* ¶ 13. The trial court ordered that the defendant resume the deposition and answer the questions and that, if he refused to cooperate, he would be barred from testifying in the case. *Id.* ¶ 16. It further stated that the defendant would be ordered to pay the attorney fees associated with pursuing the sanction motions. *Id.* The appellate court affirmed, stating that the trial court's sanction was intended to encourage the defendant to cooperate with discovery and answer the questions at his deposition. *Id.* ¶ 57. The trial court had noted that the defendant would be barred from testifying if he did not answer the questions at his deposition. *Id.* The trial court, in delaying the further sanction of barring the defendant as a witness, demonstrated that it was attempting to ensure a trial on the merits. *Id.* The appellate court held that, for this reason, the trial court's order was a " 'just order' " because it was intended to combat an abuse of the discovery process and to ensure discovery and a trial on the merits. *Id.*

¶ 20        *Palmer* and *Dolan* are instructive to the case at bar. Like in *Palmer*, plaintiff here knew that his case rested on his testimony alone, as his complaint was based upon an oral contract between himself and defendant. He was provided notice of his deposition scheduled for February 16, 2011, and the record shows that he received such notice on January 10, 2011. Between January 10 and February 16, plaintiff failed to call, e-mail, fax, send a letter, or otherwise attempt to notify defendant of his need to reschedule the deposition. Further, plaintiff did not leave town to assist his mother in Arizona until April 2. Instead of attempting to change the hearing date on defendant's motion, plaintiff chose to simply fail to appear in court on April 7 and skip an opportunity to explain his failure to appear for his deposition. Even when plaintiff filed a motion to vacate the April 7 order, which he did not do until nearly three weeks after that order was entered and over a month after the scheduled deposition date, he failed to explain why he failed to appear at the deposition. Like in *Palmer*, this information was well within plaintiff's control, and he chose not to share it with

the trial court or defendant in a timely fashion. Upon plaintiff's motion to vacate, the trial court, like the trial court in *Dolan*, attempted to ensure a trial on the merits when it refashioned its sanction order, stating that plaintiff could avoid being barred as a witness by complying with the court's order to pay within 60 days defense fees associated with the missed deposition. Plaintiff chose not to comply with this court order and thereby incurred the drastic sanction. Like the *Palmer* and *Dolan* trial courts, the trial court in this case acted within its discretion by barring plaintiff as a witness where he willfully violated deadlines and discovery rules imposed both by the court and by supreme court rules and did so over the course of four years.

¶ 21    Plaintiff relies on two cases for his position that the trial court abused its discretion in barring him from testifying, but we find both cases distinguishable. First, the trial court in *King v. Clay*, 335 Ill. App. 3d 923 (2002), abused its discretion in barring the plaintiff from testifying, because the plaintiff's failure to appear for a deposition was not willful but rather was the result of the defendant's failure to proceed to schedule it. *Id.* at 926. Further, the plaintiff had already appeared and testified at an arbitration hearing, and thus the defendant would not have been prejudiced by the failure to depose the plaintiff in discovery if she were allowed to testify at the trial. *Id.* at 927-28. Second, in *Danzot v. Zabilka*, 342 Ill. App. 3d 493, 497-98 (2003), the plaintiff did not breach any court rule or court order and fully complied with discovery orders and rules during an arbitration hearing. The trial court's basis for barring witnesses from testifying was that the plaintiff had chosen not to call the witnesses during the arbitration hearing. *Id.* at 498. The appellate court found an abuse of discretion because the plaintiff was not obligated to call the witnesses during the arbitration hearing, as she was entitled to make strategic decisions, and the defendant could have subpoenaed the witnesses if she wanted them to testify. *Id.*

¶ 22    Here, unlike in *King*, defendant pursued the discovery deposition and did not have the benefit of plaintiff's testimony at an arbitration hearing. Further, unlike in *Danzot*, plaintiff here failed to appear for his deposition, failed to attempt to reschedule, failed to comply with other discovery orders, failed to pay defendant's fees and costs as ordered, and failed to explain why his conduct was anything other than willful, deliberate, contumacious, or an unwarranted disregard for the court's authority. Plaintiff, as demonstrated by the record, showed a consistent pattern of disregarding court rules, orders, and deadlines throughout the course of this litigation. Such conduct is just the type to lead to a dismissal or a barring of witnesses. See also *Chabowski v. Vacation Village Ass'n*, 291 Ill. App. 3d 525, 528-29 (1997) (upholding dismissal of the plaintiff's case where the plaintiff's counsel showed a disregard for the court's authority throughout the lawsuit, including failing to show up for hearings and failing to show up for the plaintiff's deposition without notifying the defendant or court or providing any reason). We therefore do not find *King* or *Danzot* binding on the facts of this case.

¶ 23    Regarding plaintiff's suggestion that the court failed to determine the reasonableness of defendant's attorney fees associated with the missed deposition and pursuit of Rule 219 sanctions, plaintiff failed to include reports of proceedings in the record. Thus, we construe any doubts against plaintiff and presume that the trial court properly considered the reasonableness of defendant's attorney fees. We therefore reject plaintiff's contention that

"imposing those exorbitant fees in lieu of the penalty of debarment from testifying was not a mitigation of the debarment sanction."

¶ 24       Next, plaintiff argues that the trial court erred in denying his motion for leave to file an amended complaint, which would have added claims of wrongful termination and promissory estoppel. The decision to grant leave to amend a complaint rests within the sound discretion of the trial court, and we will not reverse such a decision absent an abuse of that discretion. *I.C.S. Illinois, Inc. v. Waste Management of Illinois, Inc.*, 403 Ill. App. 3d 211, 219 (2010). The right to amend is neither absolute nor unlimited. *Id.* In determining whether a trial court has abused its discretion in granting or denying such leave, this court must consider the following factors: (1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment was timely; and (4) whether previous opportunities to amend the pleading could be identified. *Id.* at 220. The plaintiff must meet all four factors, and if the proposed amendment does not state a cognizable claim, thus failing the first factor, the reviewing court need not proceed with further analysis. *Id.*

¶ 25       Plaintiff argues that adding his wrongful-termination and promissory-estoppel claims would have cured his defective pleading because it would have incorporated facts acknowledged by defendant and would have allowed him to request additional discovery regarding the reason for his termination. Plaintiff argues that defendant would not have been surprised or prejudiced by the additional claims. He also claims that his proposed amendment was timely because he could not have filed it before he had evidence, obtained through discovery, that acknowledged the revised terms of his employment contract. We disagree with plaintiff's arguments.

¶ 26       As defendant argues, a trial court may consider whether a proposed amendment concerns matters known to the plaintiff when the original pleading was filed and whether the plaintiff provides good reason for not filing at that time. *Johnson v. Abbott Laboratories, Inc.*, 238 Ill. App. 3d 898, 904 (1992). In its motion to dismiss, dated October 30, 2008, defendant included correspondence from plaintiff in which it admitted that plaintiff would be allowed time during the day to pursue private legal work in lieu of additional compensation for any legal work performed for defendant's benefit. This is the "admission" by defendant that plaintiff claims as the basis for his additional claims. However, plaintiff provides no reason for not filing these claims in his original complaint when they are based upon the alleged oral contract to which he was obviously a party. The alleged facts underlying the claims were entirely within plaintiff's knowledge when he filed his original complaint. Even if the facts were not within his knowledge at the time of the original complaint, plaintiff made no attempt to amend his complaint in a timely fashion after defendant's motion to dismiss (October 30, 2008) or after the court limited discovery to exclude the reasons for plaintiff's termination (October 6, 2010). Plaintiff also fails to explain why defendant would not have been prejudiced by these entirely new claims, which possibly would have required a different defense strategy, four years after it commenced defending this litigation. Under these facts, which demonstrate that plaintiff's amendment was untimely and would have prejudiced defendant, we cannot say that the trial court abused its discretion in denying plaintiff's motion seeking leave to file an amended complaint.

¶ 27                                III. CONCLUSION

¶ 28        Based on the foregoing reasons, we affirm the judgment of the circuit court of Kane County.

¶ 29        Affirmed.