2019 IL App (2d) 180328

Nos. 2-18-0328 & 18-0686 cons.

Opinion filed August 8, 2019

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| HARTWELL P. MORSE III and DEBORAH B. MORSE, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 15-CH-2123 |
| ANTHONY DONATI and CONCETTA DONATI, | ) ) ) | Honorable Bonnie M. Wheaton, |
| Defendants-Appellees. | ) | Judge, Presiding. |

_____

JUSTICE ZENOFF delivered the judgment of the court, with opinion.
Justices Hutchinson and Hudson concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiffs, Hartwell P. Morse III and Deborah B. Morse, sued defendants, Anthony Donati and Concetta Donati, for breach of contract arising from a real estate transaction. In appeal No. 2-18-0328, plaintiffs appeal the judgment of the circuit court of Du Page County awarding them only $3608 plus costs. In appeal No. 2-18-0686, plaintiffs appeal the order denying Hartwell's petition for attorney fees. This court consolidated the appeals. We now affirm.

¶ 2                                I. BACKGROUND

¶ 3    Plaintiffs owned property commonly known as 282 Stonegate in Clarendon Hills (the property). The property was encumbered by two mortgages. Chase Bank held the first mortgage. PNC Bank (the bank) held the second mortgage. Plaintiffs defaulted on both mortgages.

¶ 4    In August 2015, plaintiffs entered into a contract for the sale of the property to defendants for $410,000. That contract contained a "short sale addendum," meaning that plaintiffs were selling the property for less than they owed. The sale was contingent upon plaintiffs' obtaining the bank's consent.[1] On September 22, 2015, the bank agreed to the short sale, provided that the bank received all of the proceeds and that plaintiffs received $0 at closing. The bank also agreed not to pursue a deficiency judgment against plaintiffs.

¶ 5    On December 21, 2015, defendants refused to close, because of a dispute with their lender. On December 28, 2015, Hartwell, an attorney, filed suit on behalf of himself and Deborah against defendants, for specific performance. On April 12, 2016, plaintiffs sold the property to Susan Kolinger for $375,000, $35,000 less than defendants' contract price. That sale was also a short sale that was approved by the bank on the same terms as outlined above. On July 28, 2016, plaintiffs filed an amended one-count complaint against defendants for breach of contract. Defendants, in their original and amended answers, denied that plaintiffs were damaged.

¶ 6    On July 26, 2017, plaintiffs filed a motion for summary judgment. Before that motion was heard, plaintiffs filed a 43-page motion (omnibus motion) seeking $35,000 in discovery sanctions against defendants and their counsel. On August 11, 2017, defendants filed a cross-motion for partial summary judgment, arguing that plaintiffs suffered no damages as a

_____

[1] Because Chase Bank ultimately was paid in full, its consent for the short sale was not required.

result of the sale to Kolinger. Plaintiffs then filed a second motion for sanctions against defendants on the ground that the defenses raised in defendants' cross-motion for summary judgment had not been disclosed in response to plaintiffs' interrogatories. Defendants did not file responses to either motion for sanctions. Those motions were continued for hearing to November 29, 2017, along with the cross-motions for summary judgment.

¶ 7     At the beginning of the hearing, Hartwell stated that he was putting the sanctions motions aside and would be arguing the merits of plaintiffs' summary-judgment motion. The court then twice inquired whether Hartwell was arguing the motions for sanctions or the motion for summary judgment. Hartwell replied: "The motion for sanctions, Your Honor, is not being argued at this moment. I put that aside." He never returned to the motions for sanctions, and the court did not rule on them.

¶ 8     The court found that defendants breached the contract. However, the court ruled that whether plaintiffs sustained damages was an issue of fact, to be resolved at trial. Prior to trial, attorney Gregory Vacala filed his appearance as cocounsel for plaintiffs.

¶ 9     On March 23, 2018, plaintiffs filed a motion to bar defendants' "anticipated defenses" at trial, as a discovery sanction. That motion referenced the omnibus motion, but it did not specifically incorporate it. Vacala argued that defendants had not raised as an affirmative defense plaintiffs' failure to mitigate damages, or the so-called "short-sale defense." The court ruled that damages had earlier been explored and argued "at great length" and that plaintiffs were not taken by surprise.

¶ 10     At the bench trial on April 2, 2018, Hartwell was the only witness. He testified that the sale to defendants was a short sale, for which plaintiffs would not receive any money at closing. Hartwell admitted that the bank would have been entitled to the additional $35,000 if defendants

had closed. Hartwell then detailed the expenses that he claimed plaintiffs incurred between the breach on December 21, 2015, and the Kolinger closing on April 12, 2016 (the breach period). In all, plaintiffs claimed damages of $48,881.70. Hartwell admitted that he had no paid receipts or canceled checks for many of the utility bills and other charges for which plaintiffs demanded reimbursement. Hartwell testified that he was required to pay $1658.93 toward Coldwell Banker's brokerage fees at closing. Hartwell also claimed that Chase Bank and the bank charged an additional $10,239 in interest during the breach period. Hartwell admitted that plaintiffs did not pay any of that interest.

¶ 11    Defendants argued that plaintiffs were not damaged, because the bank suffered the $35,000 loss. To counter that argument, plaintiffs contended that the "collateral source rule" should apply to allow plaintiffs to recover damages despite having no out-of-pocket loss. The collateral-source rule, generally applied in tort cases, provides that an injured party who receives benefits from a collateral source, such as an insurance company, may still recover full damages from the tortfeasor. Robert Hernquist, *Arthur v. Catour: An Examination of the Collateral Source Rule in Illinois*, 38 Loy. U. Chi. L.J. 169, 175 (2006). Defendants argued that the bank bore the loss and was not a collateral source. The court declined to apply the collateral-source rule.

¶ 12    The court found that plaintiffs proved out-of-pocket damages of $3608 plus costs. The court arrived at that figure by adding the amounts of the bills paid during the breach period to the $1658.93 that plaintiffs paid at closing. The court attributed the additional $1658.93 to title charges occasioned by the interest that Chase Bank billed during the breach period. The court entered its written judgment on April 16, 2018. The court also gave the parties 30 days to file petitions for attorney fees. Vacala filed a fee petition for $6428.80, and Hartwell filed a fee

petition for $82,500. Defendants filed a fee petition for $10,950. On August 22, 2018, the court granted Vacala's petition plus the costs of filing the complaint and serving summons. The court denied defendants' and Hartwell's petitions.

¶ 13    On May 2, 2018, plaintiffs filed a timely notice of appeal from the court's judgment of April 16, 2018. Plaintiffs also filed a timely notice of appeal from that part of the August 22, 2018, order denying Hartwell's petition for attorney fees. As noted, this court consolidated the appeals.

¶ 14                                    II. ANALYSIS

¶ 15    Plaintiffs argue that they are entitled to damages of $35,000—the difference between the two contract prices—even though they realized no actual loss. Plaintiffs assert that the collateral-source rule should apply when sellers have no out-of-pocket damages due to a short sale. In failing to apply this rule, plaintiffs argue, the court treated the damages assessment differently than it would in a breach-of-contract case that does not involve a short sale.

¶ 16    Before we consider these arguments, we must address certain deficiencies in plaintiffs' brief and appendix. Illinois Supreme Court Rules 341(h)(6) and (h)(7) (eff. May 25, 2018) require that the statement of facts and argument contain appropriate citations to pages of the record. Plaintiffs, however, cite their appendix, in violation of the rules. See *Estate of Prather v. Sherman Hospital Systems*, 2015 IL App (2d) 140723, ¶ 31 (it is a violation of Rule 341(h) to cite the appendix rather than the record). Plaintiffs also violate Illinois Supreme Court Rule 341(h)(3) (eff. May 25, 2018) in that they do not include a standard of review for their argument that the court should have awarded them the difference in the contract prices. Further, plaintiffs' appendix does not list the pages of the record on which the witness's direct examination, cross-examination, and redirect examination begin, in violation of Illinois Supreme Court Rule

342(3) (eff. July 1, 2017). Most important, the exhibits that were admitted at trial are not in the record, but plaintiffs nonetheless included them in the appendix and refer to them in their brief. If materials are not taken from the record, they may not be placed before us in an appendix and will be disregarded. *Oruta v. B.E.W. & Continental*, 2016 IL App (1st) 152735, ¶ 32. We remind counsel that the Illinois Supreme Court rules are not mere suggestions; they have the force of law, and we may strike portions of a brief or dismiss an appeal when the circumstances warrant such sanctions. *Estate of Prather*, 2015 IL App (2d) 140723, ¶ 32. Here, the record is not voluminous and defendants include appropriate citations to the record, so our review is not hindered. Accordingly, we will consider the merits of the appeal.

¶ 17     We first address whether the court applied an erroneous measure of damages. A reviewing court will not reverse the damages assessed by a trial court in a bench trial unless its judgment is against the manifest weight of the evidence. *Royal's Reconditioning Corp., Inc. v. Royal*, 293 Ill. App. 3d 1019, 1022 (1997). A damages assessment is against the manifest weight of the evidence when the court ignored the evidence or used an incorrect measure of damages. *Royal*, 293 Ill. App. 3d at 1022.

¶ 18     To recover damages in a breach-of-contract action, a plaintiff must establish an *actual* loss resulting from the breach. *In re Illinois Bell Telephone Link-up II & Late Charge Litigation*, 2013 IL App (1st) 113349, ¶ 19. The measure of the "actual loss" is the damages that are compensatory, in restitution for the harm caused, and that make the plaintiff whole again, but do not place him or her in a better position than if the contract had been performed. *Wanderer v. Plainfield Carton Corp.*, 40 Ill. App. 3d 552, 556 (1976). "Damages are an essential element of a breach of contract action and a claimant's failure to prove damages entitles the defendant to judgment as a matter of law." *In re Illinois Bell*, 2013 IL App (1st) 113349, ¶ 19.

¶ 19    We conclude that the collateral-source rule is not implicated here, because (1) the bank absorbed the loss, (2) the loan forgiveness was not a payment to plaintiffs but a necessary condition for plaintiffs to sell the property, (3) the bank did not confer a benefit on plaintiffs, but acted in its own commercial interest, and (4) plaintiffs agreed, as a condition of obtaining the bank's assent to the short sale and its debt forgiveness, to walk away from the transaction with $0.

¶ 20    Our analysis begins with the collateral-source rule. As noted, the collateral-source rule is rooted in tort recovery. The fundamental premise of tort law is to justly compensate for any "loss or injury proximately caused by the tortfeasor." *Clark v. Children's Memorial Hospital*, 2011 IL 108656, ¶ 29. Historically, tort law provided the principal, if not sole, source of compensation for injuries suffered. John G. Fleming, *The Collateral Source Rule and Loss Allocation in Tort Law*, 54 Calif. L. Rev. 1478 (1966). However, today, some or all of a tort victim's losses are likely covered by benefits that are paid before the injured party receives a recovery in tort. Fleming, *supra*, at 1480 (1966). Those benefits implicate the collateral-source rule. *Arthur v. Catour*, 216 Ill. 2d 72, 80 (2005). To reiterate that rule: in Illinois, it is well established that benefits an injured party received from a source independent of and collateral to the tortfeasor will not diminish the damages that are otherwise recoverable from the tortfeasor. *Muranyi v. Turn Verein Frisch-Auf*, 308 Ill. App. 3d 213, 215 (1999).

¶ 21    Courts frequently apply the rule where a defendant seeks a reduction in damages because of insurance payments that the plaintiff has received. *Arthur*, 216 Ill. 2d at 79. In that typical case, the injured party's expenses are paid so that he or she has no actual loss. *Arthur*, 216 Ill. 2d at 80. However, one justification for the rule is that the wrongdoer should not benefit from expenditures that the injured party made or take advantage of contracts or other relations that

exist between the injured party and third persons. *Arthur*, 216 Ill. 2d at 79 (citing *Wilson v. The Hoffman Group, Inc.*, 131 Ill. 2d 308, 320 (1989)). Another justification for the rule is that the collateral source will typically have a lien or a subrogation right that prevents a double recovery. *Wills v. Foster*, 229 Ill. 2d 393, 399 (2008). The rule operates as both a rule of damages and a rule of evidence. *Arthur*, 216 Ill. 2d at 79-80. Regarding evidence, the rule prevents juries from hearing about a collateral source that could cause them to deny the plaintiff a full recovery. *Arthur*, 216 Ill. 2d at 80.

¶ 22    From the foregoing, we see that the collateral-source rule does not come into play unless (1) the victim suffers an actual loss (2) for which he or she has been compensated by sources other than the tortfeasor. At trial, in their appellate briefs, and at oral argument in this case, plaintiffs admitted that they suffered no out-of-pocket loss and that the loss was borne by the bank. Plaintiffs posit that the bank's agreement not to pursue a deficiency judgment against them was a payment to compensate them for the difference in contract prices, but that argument is specious in light of their admission that they suffered no actual loss.

¶ 23    Even if we could say that plaintiffs suffered a loss, the bank's forgiveness of their debt was not compensation for such loss. It was strictly a commercial arrangement dictated by the unfortunate fact that a job loss caused plaintiffs to default on their mortgage. To forestall foreclosure, plaintiffs agreed to sell the property to defendants for less than they owed to the bank. Quite simply, to make the sale possible, plaintiffs needed the bank's agreement to accept less than the mortgage loan balance.

¶ 24    Nor was plaintiffs' arrangement with the bank collateral to the sales contract with defendants. This case involved four contracts, not just the two real estate sales contracts. The first contract was the mortgage between plaintiffs and the bank. The second was the contract

between plaintiffs and defendants. The third was the contract between plaintiffs and Kolinger. The fourth was the short-sale agreement between plaintiffs and the bank, in which the bank agreed to cancel plaintiffs' debt in consideration for plaintiffs' agreement (1) to pay the sale proceeds to the bank and (2) to net $0 at closing. We cannot set aside as irrelevant plaintiffs' short-sale agreement with the bank, as plaintiffs suggest we should, because the short-sale addendum was part of the real estate contracts and affected the amount that plaintiffs could legally realize from the transaction, which was $0. In other words, plaintiffs' short-sale agreement with the bank was not collateral to the transaction with defendants, but was integral thereto.

¶ 25    Plaintiffs argue that the bank's agreement not to pursue a deficiency judgment was collateral to the contract with defendants, because the short-sale addendum required only that plaintiffs obtain the bank's permission to do a short sale. We disagree. In exchange for the bank's forgiveness of the total debt, plaintiffs agreed to walk away with $0 at closing. The advantage to the bank was that it received a substantial amount of the mortgage balance quickly versus having to go through the costly foreclosure process. See Tracie R. Porter, *The Quagmire of Mortgage Short Sale Transactions Under Current Homeownership Tax Policy in a Time of Crisis*, 49 Akron L. Review 813, 816 (2015). Thus, the bank was protecting its own interests. More important, plaintiffs were obligated to pay all of the proceeds of the sale to the bank. Thus, as plaintiffs admit, the loss of $35,000 in sale proceeds was the bank's loss, not plaintiffs'.

¶ 26    Further, we reject plaintiffs' rationale for applying the collateral-source rule here. According to plaintiffs, its application would equalize damages assessments between parties who suffer actual damages and those who do not. Plaintiffs maintain that, if the sale had not been a short sale, they could have proved actual damages. Pared to its essence, plaintiffs' argument is

that damages should be presumed in a short sale, to alleviate the economic hardship attendant to homeowners who owe more than their properties are worth. We recognize the financial distress of such homeowners. However, plaintiffs stand the law on its head, because an award of $35,000 would better their position.

¶ 27    Plaintiffs argue that defendants should not be able to take advantage of the bank's forgiveness of plaintiffs' debt. But defendants did not take advantage of anything. Defendants offered a price that plaintiffs accepted. To sell the property at that price, plaintiffs were legally obligated to obtain the bank's agreement, because it was the bank that would absorb the loss. As a condition of that agreement, in which the bank cancelled all of the debt, plaintiffs were legally bound to pay all of the sale proceeds to the bank and to walk away from the closing with $0. It turned out that, because of Chase Bank's additional interest, plaintiffs had to pay approximately $1600 at closing. The court awarded plaintiffs that amount, thus returning them to $0. Plaintiffs are in the exact position that they bargained for.

¶ 28    In their reply brief, plaintiffs argue for the first time that defendants' breach was "willful." Although plaintiffs alleged in their amended complaint that defendants' breach was willful, they did not specifically argue that point in their opening brief (or at trial). Generally, arguments raised for the first time in a reply brief are deemed forfeited. *People v. Miranda*, 2018 IL App (1st) 170218, ¶ 27. Forfeiture aside, our supreme court held in *Valfer v. Evanston Northwestern Healthcare*, 2016 IL 119220, ¶ 27, that the tort concept of "wilful and wanton" has "no application to a nontort claim such as a routine breach of contract action." "A breach of contract is not considered a tort because intent or the willfulness of the breach is not relevant ***." *Valfer*, 2016 IL 119220, ¶ 27.[2] Here, plaintiffs brought a one-count breach-of-contract

---

[2] Plaintiffs rely on the First District's opinion in *American Fidelity Fire Insurance Co. v.*

action based on defendants' failure to close on the real estate contract. Plaintiffs did not bring additional counts alleging any tortious conduct. Further, the substantive component of the collateral-source rule is a rule of damages (*Arthur*, 216 Ill. 2d at 80), and plaintiffs admit that they did not suffer an actual loss. Accordingly, we hold that the trial court's measure of damages was not against the manifest weight of the evidence.

¶ 29 Plaintiffs next contend that they proved damages in the form of additional interest charges of $10,239 that their lenders billed during the breach period. Plaintiffs admit that they did not pay either lender during that period. The court found that the increased title charges of $1658.93 that plaintiffs paid at closing were attributable to the interest that Chase Bank billed during the breach period, and it awarded plaintiffs that amount in damages. Again, we will not disturb the court's finding unless it is against the manifest weight of the evidence. *Royal*, 293 Ill. App. 3d at 1022.

¶ 30 Plaintiffs argue that the court ignored Hartwell's testimony that the $1658.93 was paid toward Coldwell Banker's brokerage fees rather than Chase Bank's interest. We fail to understand how plaintiffs' argument is anything other than spurious. Plaintiff's argument—that if they paid $0 toward those interest charges, they are entitled to over $10,000 in damages—is

*General Ry. Signal Co.*, 184 Ill. App. 3d 601, 617 (1989), where the court stated that the collateral-source rule applies in contract cases "only where there is an element of fraud, tort, or wilfulness." To the extent that the court might have implied that willfulness is relevant to a breach of contract, we believe that *American Fidelity* is no longer good law in light of *Valfer*. We note that the Fourth District cited *American Fidelity* in *Jiles v. Spratt*, 195 Ill. App. 3d 354, 358 (1990), and stated that the collateral-source rule applies to willfulness in breaching a contract. We believe that *Jiles* is also no longer good law on that point.

essentially the same argument that we rejected above. We reiterate that a party must show an *actual* loss. *In re Illinois Bell*, 2013 IL App (1st) 113349, ¶ 19. If the court mistakenly credited the $1658.93 to the Chase Bank interest, that mistake worked in plaintiffs' favor. Accordingly, the court's determination that plaintiffs were not entitled to additional damages was not against the manifest weight of the evidence.

¶ 31     Next, plaintiffs contend that the court abused its discretion in not granting their omnibus motion for discovery sanctions and the accompanying motion to strike defendants' cross-motion for summary judgment as a discovery sanction. Illinois Supreme Court Rule 219(c) (eff. July 1, 2002) provides that, if a party unreasonably fails to comply with discovery rules, the court may impose a variety of sanctions. *Rosen v. The Larkin Center, Inc.*, 2012 IL App (2d) 120589, ¶ 16. The decision whether to impose sanctions is within the trial court's discretion, and only an abuse of that discretion will occasion a reversal. *Rosen*, 2012 IL App (2d) 120589, ¶ 16.

¶ 32     The record shows that plaintiffs abandoned the sanctions motions. After the motions were filed, they were continued to the summary-judgment hearing on November 29, 2017. At that hearing, the court noted that both types of motions were before it. Hartwell stated that he was setting the sanctions motions aside to argue the merits of plaintiffs' summary-judgment motion. Defendants' counsel inquired once, and the court inquired twice, whether Hartwell was arguing the sanctions motions or the summary-judgment motion. Hartwell stated that he was arguing the summary-judgment motion. He clearly stated that the sanctions motions were "not being argued at this moment. I put that aside." Hartwell never requested a ruling on the motions, either at that hearing or before he filed the notice of appeal.

¶ 33     A party's failure to obtain a ruling on a motion does not mean that the court denied the motion. *Rodriguez v. Illinois Prisoner Review Board*, 376 Ill. App. 3d 429, 432-33 (2007). It is

the moving party's responsibility to request the judge to rule on his or her motion, and when no ruling has been made, the party is presumed to have abandoned the motion, absent circumstances indicating otherwise. *Rodriguez*, 376 Ill. App. 3d at 433. Filing a notice of appeal without first obtaining a ruling on a motion constitutes abandonment of that motion. *Rodriguez*, 376 Ill. App. 3d at 433. Because plaintiffs never sought a ruling on the sanctions motions, we are unable to review them.

¶ 34    Next, plaintiffs argue that the court abused its discretion when it denied their motion to bar the "short-sale defense" at trial. That motion alleged that defendants failed to raise the "short-sale defense" as an affirmative defense, in their answer to either the complaint or an interrogatory. Plaintiffs thus asserted that they were taken by surprise. The court pointed out that damages were extensively discussed at the summary-judgment hearing. However, plaintiffs maintain that they did not know that defendants were contesting damages until defendants filed their cross-motion for summary judgment. By then, plaintiffs assert, they had no opportunity to conduct discovery on the "short-sale defense" or to file dispositive motions regarding that defense. Again, the decision whether to impose sanctions is within the trial court's discretion, and we will reverse only where there was an abuse of that discretion. *Rosen*, 2012 IL App (2d) 120589, ¶ 16.

¶ 35    What plaintiffs call a "short-sale defense" was simply defendants' denial that plaintiffs suffered any actual damages. As discussed above, a contract for a short sale does not relieve a plaintiff from having to prove an actual loss. Defendants denied plaintiffs' allegations of damages, in both their original and amended answers. Defendants were not also required to raise the lack of damages as an affirmative defense. "[T]he mere denial of an element of a cause of

action, without asserting any new matter, does not constitute an affirmative defense." *Rohr Burg Motors, Inc. v. Kulbarsh*, 2014 IL App (1st) 131664, ¶ 63.

¶ 36    Plaintiffs' interrogatory asked defendants to list "all affirmative defenses." Defendants included "mitigation of damages" in their answer, but they did not list their denial that plaintiffs suffered any actual loss. The disclosure requirements pursuant to Illinois Supreme Court Rule 213 (eff. Jan 1, 2018) are mandatory and necessitate strict compliance. *Kovera v. Envirite of Illinois, Inc.*, 2015 IL App (1st) 133049, ¶ 59. Because defendants' denial that plaintiffs suffered any damages was not an "affirmative defense," defendants did not have to disclose it in response to the interrogatory. However, even if the denial of damages had been subject to disclosure as an affirmative defense, the failure to comply with Rule 213 does not automatically result in exclusion of the noncomplying party's evidence. *Kovera*, 2015 IL App (1st) 133049, ¶ 59. In determining whether to bar testimony as a sanction, the court must consider (1) the surprise to the adverse party, (2) the prejudicial effect of the testimony, (3) the nature of the testimony, (4) the diligence of the adverse party, (5) the timeliness of the objection to the testimony, and (6) the good faith of the party calling the witness. *Kovera*, 2015 IL App (1st) 133049, ¶ 59. Here, the only factor that plaintiffs argued at trial was surprise.

¶ 37    We reject plaintiffs' contention that they lacked notice that defendants were contesting damages until defendants filed their cross-motion for summary judgment. As noted, defendants' answers denied plaintiffs' allegations of damages. It has ever been thus that issues are joined by allegations and denials of fact. See *Chicago G.W. Ry. Co. v. People*, 79 Ill. App. 529, 531 (1898). Consequently, there is no such thing as a "short-sale defense" by which defendants could have ambushed plaintiffs. Nothing in the form real estate contract between plaintiffs and defendants distinguishes it from any other contract to sell real estate except a short-sale

contingency that the sellers obtain their lender's approval. Yet, throughout this litigation, plaintiffs have attempted to shapeshift an ordinary breach-of-contract case into a new species of contract/tort as a means to reap a windfall. Moreover, plaintiffs could have obtained nothing in discovery that they did not already have, because the facts surrounding the short sale were of their own making.

¶ 38    Certainly, at the hearing on the cross-motions for summary judgment, which was well before trial, damages became the sole issue. Defendants clearly argued that plaintiffs did not have any out-of-pocket loss. The court observed the parties' divergent views when it remarked that plaintiffs focused on the difference in contract price as the measure of damages while defendants focused on the "net to seller." The court found that there were "significant questions of fact" as to what the damages were. The court even listed the documents that it would need at trial to assess the damages.

¶ 39    Plaintiffs further assert that the purported discovery violations enumerated in their omnibus motion required the court to grant the motion to bar defendants' defenses at trial. But plaintiffs did not incorporate the omnibus motion into the motion to bar. While Vacala asked the court to take judicial notice of the omnibus motion, and he argued that the court should consider defendants' numerous discovery violations, he did not ask for a ruling on the omnibus motion. Thus, that motion is irrelevant to whether the court abused its discretion in denying the motion to bar. Moreover, plaintiffs fail to cite any authority for their argument that the court should not have allowed defendants to oppose the motion to bar, due to their prior alleged discovery violations. As such, that argument is forfeited under Rule 341(h)(7) (requiring the appellant to cite authorities in support of its argument). Accordingly, we determine that the court did not abuse its discretion in denying the motion to bar.

¶ 40    Lastly, plaintiffs urge that we vacate the court's award of attorney fees only *if* we hold that they are entitled to additional damages. As we have determined that plaintiffs are not entitled to additional damages, we affirm the award of attorney fees.

¶ 41                                    III. CONCLUSION

¶ 42    For the reasons stated above, the judgment of the circuit court of Du Page County is affirmed.

¶ 43    Affirmed.