2015 IL App (2d) 140723
No. 2-14-0723
Opinion filed June 26, 2015

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE ESTATE OF GIANNA PRATHER, a Minor, By and Through her Grandmother, Josefa Pena, and her Plenary Guardian, The Northern Trust Company, | ) ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellant, | ) ) ) | |
| v. | ) ) | No. 08-L-220 |
| SHERMAN HOSPITAL SYSTEMS, SHERMAN HOSPITAL, INC., and CAROL KORZEN, M.D., | ) ) ) ) | Honorable F. Keith Brown, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE BURKE delivered the judgment of the court, with opinion.
Justices McLaren and Jorgensen concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, the estate of Gianna Prather, appeals from the trial court's orders that dismissed the case after approving a settlement agreement with defendants, Sherman Hospital Systems, Sherman Hospital, Inc. (collectively, Sherman Hospital), and Dr. Carol Korzen. Dr. Korzen delivered Gianna Prather at Sherman Hospital in Elgin. Soon after her birth, Gianna was diagnosed with permanent neurological injuries, and she now suffers from profound physical and developmental disabilities. Gianna resides at Misericordia Home, where the State pays for her care.

¶ 2    Gianna's mother, Jaclyn Pena-Prather, filed a complaint against defendants in the circuit court of Cook County, seeking damages for Gianna's condition. Defendants successfully moved to transfer the matter to the circuit court of Kane County, and the Northern Trust Company was named guardian of Gianna's estate. Before trial, the parties engaged in extensive settlement negotiations, but Gianna's grandmother, Josefa Pena, then the guardian of Gianna's person, refused defendants' final settlement offer of $3 million. It appears from the record that Josefa and Northern Trust are represented by the same counsel, and nothing indicates that Northern Trust objected to Josefa's rejection of the offer. The trial court appointed a guardian *ad litem*, who recommended the proposed settlement as being in Gianna's best interest. Concluding that there was a significant risk that a jury would find defendants not liable, the trial court approved the settlement and dismissed the case, against the wishes of Gianna's family.

¶ 3    On appeal, plaintiff argues that (1) the circuit court of Cook County erred in transferring the case to Kane County, (2) the guardian *ad litem* was appointed in error, (3) the settlement is not in Gianna's best interest, (4) the settlement process was "tainted by unwarranted confidentiality," and (5) Sherman Hospital violated rules of discovery and regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA) (42 U.S.C. § 1320d *et seq*. (2012)).

¶ 4    Defendants respond that the transfer of the case was appropriate under the doctrine of *forum non conveniens* and that the settlement was in Gianna's best interest. Defendants also argue that plaintiff's appellate brief is deficient, and Sherman Hospital asks that it be stricken for failing to comply with Illinois Supreme Court Rule 341(h) (eff. Feb. 6, 2013) and Rule 342 (eff. Jan. 1, 2005). Dr. Korzen additionally argues that (1) Josefa lacks standing to bring this appeal, (2) this court should not review the appointment of the guardian *ad litem*, because we lack

jurisdiction or plaintiff has waived the issue, (3) this court should not review the order transferring the action from Cook County to Kane County, because we lack jurisdiction or plaintiff has failed to provide a sufficient record on the issue, (4) plaintiff has not preserved its argument regarding confidentiality, and (5) this court lacks jurisdiction to review Sherman Hospital's alleged discovery violation. We conclude that, Dr. Korzen's meritless jurisdictional arguments notwithstanding, the orders transferring the matter to Kane County, approving the settlement, and dismissing the action were not an abuse of discretion. We affirm.

¶ 5                         I. BACKGROUND

¶ 6     On September 5, 2005, Jaclyn arrived at Sherman Hospital for elective induction of labor because she was more than 41 weeks' pregnant. Jaclyn was a patient of Dr. Korzen, who practiced obstetrics and gynecology in Elgin.

¶ 7     After admission, an external monitor was applied and the fetus was continuously monitored throughout labor. At 2:15 a.m. on September 6, 2005, Jaclyn received an epidural. At 4:45 a.m., a nurse contacted Dr. Korzen to update her on Jaclyn's progress. Dr. Korzen was present at 7:20 a.m., and Jaclyn was coached to begin pushing. At 8:21 a.m., Gianna was delivered vaginally, weighing six pounds, four ounces.

¶ 8     Gianna's Apgar scores were very low. At one minute after birth, Gianna's score was zero. At five minutes, her score was one. At 10 minutes, her score was three. The umbilical cord was described as "thin and shoe-string-like," and was coiled seven times. The cord also was described as having no Wharton's jelly around it, a substance usually present to cushion the cord. Gianna was diagnosed with hypoxic-ischemic encephalopathy (HIE) and metabolic acidosis. Gianna has cerebral palsy and a life expectancy of only 21 years.

¶ 9    The parties dispute the cause of Gianna's permanent neurological injuries. Plaintiff asserts that she suffered intrapartum birth asphyxia and argues that the fetal monitor revealed late decelerations in labor, which indicated fetal distress that required an emergency caesarian section delivery hours before the vaginal delivery. Plaintiff alleges that Sherman Hospital, through its employees, negligently failed to interpret the fetal monitoring strips and notify Dr. Korzen of the "ominous nature" of the strips. Plaintiff further alleges that Dr. Korzen failed to timely diagnose the fetal distress and should have performed an emergency caesarian section. Plaintiff's expert, Dr. Harlan Giles, opined that Gianna was completely neurologically intact as late as 7:15 a.m. and that Dr. Korzen should have ordered an emergency caesarian section before then.

¶ 10    Defendants' theory is that Gianna's cerebral palsy was neither predictable nor preventable. Defendants argue that the fetal heart tracings did not indicate intrapartum hypoxemia or acidosis; rather, the tracings were reassuring and the actions taken by the obstetrical team were within a reasonable standard of care. Defendants assert that the thinness of the umbilical cord, the way it was coiled, and the absence of Wharton's jelly indicate an antenatal event, a genetic abnormality, or both, which contributed to the neurological outcome and could not have been avoided by an earlier delivery. Defendants deny any liability.

¶ 11                               A. Cook County

¶ 12    On December 20, 2006, Jaclyn filed her original complaint against defendants in the circuit court of Cook County. On February 26, 2007, Dr. Korzen moved to transfer the action to Kane County, and Sherman Hospital joined the motion to transfer. The parties disputed whether the public- and private-interest factors favored a transfer.

¶ 13    Defendants argued that Jaclyn and Gianna were residents of Elgin and that Sherman Hospital was also in Elgin. Dr. Korzen was a resident of Hoffman Estates in Cook County but

practiced in Elgin. Josefa, a fact witness, also lived in Elgin. Among the seven additional treating fact witnesses associated with Gianna's delivery, four resided in Kane County, three resided in McHenry County, and all worked in Kane County. Five of the seven witnesses provided affidavits stating that Kane County was more convenient than Cook County. Defendants also pointed out that Kane County's docket was less congested than Cook County's was.

¶ 14    Jaclyn responded that "the vast majority of [Gianna's] relevant medical treatment and the location of the majority of the potential medical witnesses" were in Cook County. Jaclyn also pointed out that Sherman Hospital did business in Cook County through a subsidiary. Jaclyn argued that the relative legal congestion of Cook County was irrelevant and that travel to Cook County should not be a factor, because Cook County is adjacent to Kane County and the witnesses could travel by commuter rail, such that any inconvenience would be minimal.

¶ 15    On November 6, 2007, the circuit court of Cook County granted the motion to transfer, but the record contains neither a transcript of the proceedings nor a written order explaining the court's reasoning.

¶ 16                              B. Kane County

¶ 17    On May 1, 2007, Andre Prather, Jaclyn's husband and Gianna's father, died at the age of 23 from a bronchial asthma condition. Jaclyn and Gianna lived with Jaclyn's mother, Josefa. In April 2008, the Department of Children and Family Services (DCFS) removed Gianna from the home, and the caseworker's investigation revealed "credible evidence of child abuse and/or neglect," based on Jaclyn's difficulty in coping with the death of her husband and with Gianna's condition. DCFS eventually placed Gianna at Misericordia Home, where she resides today. The State pays for Gianna's care and treatment.

¶ 18    On April 21, 2008, Josefa refiled the complaint in the circuit court of Kane County, and for the next six years the parties conducted discovery and prepared for trial. On August 5, 2009, the Northern Trust Company was appointed plenary guardian of Gianna's estate. On August 10, 2010, plaintiff filed its first amended complaint, which was substantially the same as the original complaint filed in Cook County. As the parties proceeded with discovery, plaintiff filed a second amended complaint on November 12, 2013, asserting that Josefa had been appointed the guardian of Gianna's person on August 11, 2010.

¶ 19    In March 2014, the parties began settlement negotiations and submitted to the trial court pretrial memoranda that set forth their theories of the case. Sherman Hospital and Dr. Korzen tendered separate redacted memoranda to counsel for plaintiff, denying any liability. Plaintiff's memorandum claimed damages exceeding $22.5 million. On March 25, 2014, the trial court appointed Daniel Konicek as guardian *ad litem* to evaluate potential settlement offers. Plaintiff's counsel stated expressly that he did not object to the appointment.

¶ 20    Konicek reviewed the redacted pretrial memoranda from defendants, the memorandum submitted by plaintiff, and the depositions of Dr. Korzen, Nurse Erickson, and the parties' experts. He also reviewed the fetal monitoring strips, researched the issues of causation and damages, evaluated Dr. Korzen's conduct during labor and delivery, met with plaintiff's counsel several times, and reviewed the report of plaintiff's damages expert.

¶ 21    At a pretrial conference on April 24, 2014, Konicek again interviewed the parties and assisted the trial judge. There is no transcript of the conference, but the record indicates that defendants made a final offer to settle for $3 million: $1 million, representing the full amount of Dr. Korzen's insurance policy, and $2 million from Sherman Hospital.

¶ 22  At a hearing the next day, on April 25, 2014, Konicek made a formal settlement recommendation based on his review of the documents, research, discussions with the parties, and overall evaluation of the case.  Before Konicek made his recommendation, plaintiff's counsel pointed out to the court that, although a guardian *ad litem* usually is appointed when the minor's parents are unwilling to accept the recommendation of counsel or the trial court, no such uncooperativeness was present in this case.  However, counsel stated, "I do welcome Mr. Konicek to the case, and I feel that he lends a great deal of knowledge of Kane County and of some of the medical issues in this case.  ***  There's no question he's an independent officer of the court."  Plaintiff's counsel reiterated that he did not object to Konicek's appointment.

¶ 23  Konicek recommended that plaintiff accept defendants' $3 million offer to settle. Konicek explained that plaintiff's likelihood of success at trial was an important factor.  He pointed out that Dr. Korzen had stated in her deposition that, although she did not read the fetal monitoring strips until after the incident, she would have delivered Gianna the same way had she read them contemporaneously.  Konicek concluded that Sherman Hospital could be found not liable, because, if Dr. Korzen believed that an emergency caesarian procedure was not necessary, anything the nurses did or did not do would not have proximately caused the injuries.  Konicek opined that "it's more likely than not that the hospital would probably, in my mind, win more often than not at a trial."  Konicek also agreed with the proposal to distribute the funds into a special-needs trust, so the State would continue to pay for Gianna's care.

¶ 24  On June 5, 2014, Konicek filed a written report summarizing his reasons for recommending the terms of the settlement.  Konicek explained that a $1 million settlement would guarantee Gianna $60,360 per year for 19 years and that her life expectancy is 21 years. Konicek concluded that Gianna's economic loss, including medical expenses, was $2.705

million and that her noneconomic loss was $1 million to $2 million. However, Konicek concluded that a $3 million settlement was fair because Gianna's likelihood of success at trial was low. Konicek estimated that medical malpractice actions in Kane County fail 80% to 85% of the time and that plaintiff in this case had no " 'smoking gun' or 'blame game' or other compelling evidence" that would indicate a better chance of recovery at trial. In particular, Konicek pointed out that, although Dr. Korzen had already tendered her insurance policy, Sherman Hospital's liability was less certain. The claim against Sherman Hospital was based on the conduct of the nurses, and because Dr. Korzen testified that she would not have delivered Gianna by caesarian section even if she had reviewed the fetal monitoring strips, the nurses did nothing to proximately cause Gianna's injuries. Because plaintiff could not prove proximate cause, Konicek concluded, "the case will more likely than not, result in a defense verdict." Plaintiff's counsel advised that the State would reduce its lien and accept $383,000 for the cost of Gianna's care.

¶ 25    Plaintiff objected to the settlement, claiming that it put the State's interests ahead of Gianna's. Counsel argued that nothing would be left to rebuild the family's garage into a facility for Gianna when she visits on weekends and holidays. Acknowledging this concern, the trial court set aside $150,000 outside the special-needs trust, for construction purposes and other needs that become apparent when Gianna visits home. In approving the settlement at the hearing on June 5, 2014, the court commented as follows:

> "I've tried a lot of cases. I've probably tried 20 medical malpractice cases in my
> lifetime as a judge; and I think only two of them in Kane County, possibly three have
> come to positive verdict for the plaintiff. I've also probably tried—maybe six or seven of
> those were baby cases; and out of all the baby cases I've had, none of them have come to

verdict on behalf of the plaintiff. Now, I've settled cases in which have—which had had different results, and I've been involved in those settlements.

I've reviewed this file; and even though I'm not the jury, I do believe that this would be a very difficult case for the plaintiffs to have a verdict in their favor. In fact, I'm not helping them in purposes of settlement. I think it's more likely that a verdict could come back as zero.

With that, in this situation, and receiving the report from the guardian *ad litem*, I do believe it's in the best interest of the child at this time to accept the settlement, especially in light of the fact that the settlement offers were going to be withdrawn today."

¶ 26 On June 23, 2014, plaintiff filed a motion objecting to the appointment of the guardian *ad litem* and to the approval of the settlement. To the motion, plaintiff attached a letter from plaintiff's counsel to Konicek stating, "you may be breaching your duty to Gianna by recommending that the settlement be accepted. I know of no effort on your part to seek additional funds from Sherman [Hospital], but you have consistently urged me to accept your [*sic*] offer." Plaintiff also argued that it should have received nonredacted versions of defendants' pretrial memoranda and that the court should have considered the statements from plaintiff's recently identified rebuttal witness. Plaintiff argued that the settlement could not be "in the best interest of Gianna when all she gets is $150,000 to refurbish the family's garage."

¶ 27 The court denied the motion, commenting that pretrial memoranda are typically kept confidential and that Konicek was given redacted copies of the pretrial documents, which meant that his recommendations were based on the same information that plaintiff had. The court also noted that plaintiff's counsel had agreed to *ex parte* communications as part of the pretrial

process and that, without those confidential communications, there could be no settlement conferences before the court. At the hearing, plaintiff's counsel acknowledged that he did not object to Konicek's appointment, except that he believed that no appointment was necessary in the first place. Plaintiff objected to the terms of the settlement remaining confidential, and eventually defendants abandoned their objection to making the terms public. However, none of the parties have directed us to any part of the record containing a written settlement agreement.

¶ 28    The trial court reiterated that the settlement was in the best interest of Gianna and dismissed the action on June 25, 2014. The court ruled that the transcripts of the proceedings from March 2014 to June 25, 2014, were incorporated into the order by reference. This timely appeal followed.

¶ 29                          II. ANALYSIS

¶ 30                 A. Motion to Strike Plaintiff's Brief

¶ 31    Initially, we address Sherman Hospital's argument that plaintiff's brief fails to comply with Rule 341(h) and Rule 342. Sherman Hospital asks us to strike plaintiff's brief and summarily affirm the trial court's orders. Rule 341(h)(6) requires the appellant to include a "Statement of Facts" outlining the pertinent facts "accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal." Ill. S. Ct. R. 341(h)(6) (eff. Feb. 6, 2013). Plaintiff has violated this rule by providing inaccurate facts, being argumentative, likening the facts of this case to those in an unrelated federal district court opinion, and failing to cite to the record for any factual assertions. Rule 341(h)(7) also requires that the "Argument" section include "citation of the authorities and the pages of the record relied on" (Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013)), but plaintiff's brief cites to its appendix, not to the record. Moreover, Rules 341(h)(9) and 342 require an appendix with materials from the

record only, but plaintiff occasionally refers to documents in the appendix that never were made part of the record. Ill. S. Ct. R. 341(h)(9) (eff. Feb. 6, 2013); Ill. S. Ct. R. 342 (eff. Jan. 1, 2005). Plaintiff does not respond to these allegations in its reply brief.

¶ 32 The Illinois Supreme Court Rules are not suggestions; they have the force of law and must be complied with. *People v. Campbell*, 224 Ill. 2d 80, 87 (2006). Where a brief has failed to comply with the rules, we may strike portions of the brief or dismiss the appeal should the circumstances warrant. *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 9. Ordinarily, plaintiff's violations would hinder our review to the point that dismissal of the appeal would be appropriate. However, in this case involving the best interest of a minor, we neither strike plaintiff's brief nor dismiss the appeal (*McMackin v. Weberpal Roofing, Inc*., 2011 IL App (2d) 100461, ¶ 3), but we will disregard the noncompliant portions of plaintiff's brief. We also strongly admonish counsel to follow carefully the requirements of the supreme court rules in future submissions.

¶ 33                          B. Josefa's Standing

¶ 34 Dr. Korzen argues that Josefa lacks standing to bring the appeal, because "she has no statutory or court-appointed authority to represent Gianna Prather in this lawsuit." Jaclyn, as Gianna's mother and natural guardian, filed the original complaint on December 20, 2006. Plaintiff's counsel represents that, after the birth of Gianna and the death of her husband, Jaclyn began suffering from depression, which led a juvenile court to appoint DCFS as the guardian administrator and legal guardian of Gianna on July 9, 2008. On May 12, 2009, DCFS petitioned the juvenile court to appoint Northern Trust as the plenary guardian of Gianna's estate. On August 5, 2009, the juvenile court granted the appointment.

¶ 35    On November 8, 2013, plaintiff filed a second amended complaint in this case, naming Josefa as representing Gianna. On January 10, 2014, Dr. Korzen moved to dismiss Josefa for lack of standing and to dismiss the second amended complaint. Plaintiff's counsel represented to the trial court that Josefa had been appointed the guardian of Gianna's person on August 11, 2010, but the record does not contain any evidence of the appointment. In violation of Rule 342, plaintiff's counsel attached to his reply brief a purported copy of the juvenile court's order appointing Josefa as guardian of Gianna's person, but we disregard the document because it is not part of the record. Perhaps we could undertake to contact the office of the circuit court clerk, confirm the entry of the order, and take judicial notice of the appointment, but to do so would be to act as Josefa's advocate and excuse her counsel's noncompliance with supreme court rules.

¶ 36    Regardless of plaintiff's failure to present an adequate record of Josefa's appointment as guardian of Gianna's person, Dr. Korzen cites nothing in the record to indicate that the trial court ever ruled on her challenge to Josefa's standing. Dr. Korzen presents a thorough argument on the merits but fails to present a ruling for us to review on appeal. Because the record does not establish that Dr. Korzen sought a ruling on her motion and that the trial court ruled on the matter, Dr. Korzen abandoned the standing challenge. Long ago, our supreme court held that, where there is no ruling made on an objection, an appellate court has nothing to review. *Mitchell v. Chicago, Burlington & Quincy Ry. Co.*, 265 Ill. 300, 302 (1914). We reject Dr. Korzen's standing argument accordingly.

¶ 37                                   C. Venue

¶ 38    Next, we address plaintiff's contention that the circuit court of Cook County erred in transferring the case to Kane County. Defendants respond that transfer of the case was appropriate under the doctrine of *forum non conveniens*.

¶ 39    Generally, every action must be commenced (1) in the county of residence of any defendant who is joined in good faith and with probable cause for the purpose of obtaining a judgment against him or her and not solely for the purpose of fixing venue in that county, or (2) in the county in which the transaction or some part thereof occurred out of which the cause of action arose.  735 ILCS 5/2-101 (West 2006).  In this case, venue was proper in Cook County because Dr. Korzen resides there.  However, even if a complaint is filed in an appropriate venue, Illinois Supreme Court Rule 187 permits the defendant to move to dismiss or transfer the action to a different county under the doctrine of *forum non conveniens*.  Ill. S. Ct. R. 187 (eff. Jan. 4, 2013); *Dawdy v. Union Pacific R.R*. Co., 207 Ill. 2d 167, 171 (2003).

¶ 40    The doctrine of *forum non conveniens* "allows a court to decline jurisdiction of a case, even though it may have proper jurisdiction over the subject matter and the parties, if it appears that another forum can better serve the convenience of the parties and the ends of justice." *Fennell v. Illinois Central R.R. Co*., 2012 IL 113812, ¶ 12.   The doctrine is founded in considerations of fundamental fairness and sensible and effective judicial administration. *Fennell*, 2012 IL 113812, ¶ 14.

¶ 41    Illinois courts weigh various interests, grouped into private-interest factors affecting the litigants and public-interest factors affecting court administration.  *Fennell*, 2012 IL 113812, ¶¶ 14-15.  The private-interest factors include the convenience of the parties; the relative ease of access to sources of testimonial, documentary, and real evidence; the availability of compulsory process to secure attendance of unwilling witnesses; the cost to obtain attendance of willing witnesses; the possibility of viewing the premises, if appropriate; and all other practical considerations that make a trial easy, expeditious, and inexpensive.  *Fennell*, 2012 IL 113812, ¶ 15.  The public-interest factors include the administrative difficulties caused when litigation is

handled in congested venues instead of being handled at its origin; the unfairness of imposing jury duty upon residents of a community with no connection to the litigation; and the interest in having local controversies decided locally. *Fennell*, 2012 IL 113812, ¶ 16.

¶ 42 In considering these factors, the trial court must balance the public- and private-interest factors. The court does not weigh the private-interest factors against the public-interest factors, but rather evaluates the total circumstances of the case in determining whether the balance of factors strongly favors dismissal. If any one factor were emphasized, the *forum non conveniens* doctrine would lose much of the very flexibility that makes it so valuable. *Fennell*, 2012 IL 113812, ¶ 17.

¶ 43 The defendant bears the burden of showing that the plaintiff's chosen forum is inconvenient to the defendant and that another forum is more convenient to all parties. The defendant cannot assert that the plaintiff's chosen forum is inconvenient to the plaintiff. Each motion to transfer is unique and must be decided on its own facts; and on review, the determination will be reversed only if the trial court abused its discretion in balancing the relevant factors. An abuse of discretion will be found where no reasonable person would take the view adopted by the trial court. *Fennell*, 2012 IL 113812, ¶¶ 20-21.

¶ 44 Dr. Korzen argues that we should not review the transfer order, because we lack jurisdiction or plaintiff has failed to provide a sufficient record on the issue. We disagree with both propositions.

¶ 45 Dr. Korzen argues that we lack jurisdiction because plaintiff filed its notice of appeal more than 30 days after the November 6, 2007, transfer order. Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) provides that every final judgment of a circuit court in a civil case is appealable as of right. Illinois Supreme Court Rule 303 (eff. May 30, 2008) governs the timing

of an appeal from a final judgment of a circuit court. Subsection (a)(1) of that rule provides that a notice of appeal must be filed within 30 days after the entry of the final judgment appealed from or, if a timely postjudgment motion directed against the judgment is filed, within 30 days after the entry of the order disposing of the last pending postjudgment motion. Ill. S. Ct. R. 303(a)(1) (eff. May 30, 2008). "A final judgment is a determination by the court on the issues presented by the pleadings which ascertains and fixes absolutely and finally the rights of the parties in the lawsuit." *Big Sky Excavating, Inc. v. Illinois Bell Telephone Co.*, 217 Ill. 2d 221, 232-33 (2005). A judgment is final if it determines the litigation on the merits so that, if affirmed, the only thing remaining is to proceed with execution of the judgment. *In re Marriage of Ehgartner-Shachter*, 366 Ill. App. 3d 278, 283 (2006).

¶ 46    Here, the transfer order was not a final order, because it was not a determination that ascertained and fixed absolutely and finally the rights of the parties. Recognizing the interlocutory nature of the order, Jaclyn sought permissive review in the Appellate Court, First District, which denied leave to appeal. Plaintiff seeks review of the order in this appeal from the final order dismissing the action after settlement.

¶ 47    An appeal from a final judgment draws into issue all previous interlocutory orders that produced the final judgment; and consequently, a court of review has jurisdiction to review an interlocutory order that constitutes a procedural step in the progression leading to the entry of the final judgment from which an appeal has been taken. *Knapp v. Bulun*, 392 Ill. App. 3d 1018, 1023 (2009). Plaintiff's cause of action was never dismissed, but rather transferred to Kane County. Rule 187(c)(1) provides that, upon transfer, the action shall proceed as if it had originated in that court. Ill. S. Ct. R. 187(c)(1) (eff. Jan. 4, 2013) ("The clerk of the court to which the transfer is ordered shall file the [original] documents [filed in the case] and transcript

transmitted to him or her and docket the case, and the action shall proceed and be determined as if it had originated in that court."). Thus, the transfer order in Cook County is considered an interlocutory order leading to the judgment entered in Kane County. Rule 301 and Rule 303 confer jurisdiction to review the transfer order because plaintiff filed a notice of appeal on July 17, 2014, which was within 30 days of the final order of dismissal entered on June 25, 2014. See Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); Ill. S. Ct. R. 303 (eff. May 30, 2008).

¶ 48 Although we have jurisdiction to review the transfer, the record contains neither a written order nor a transcript prepared by the circuit court of Cook County, which hinders our review. Under *Foutch v. O'Bryant*, 99 Ill. 2d 389 (1984), plaintiff, as appellant, had the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error; and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court conformed with the law and had a sufficient factual basis. See *Foutch*, 99 Ill. 2d at 391-92.

¶ 49 Plaintiff's appendix includes a copy of the transcript from the November 7, 2007, hearing where the trial court granted defendants' motion to transfer, but we disregard the filing because plaintiff has failed to move to supplement the record. See Ill. S. Ct. R. 341(h)(9) (eff. Feb. 6, 2013); Ill. S. Ct. R. 342 (eff. Jan. 1, 2005) (Rule 341(h)(9) and Rule 342 require an appendix with materials from the record only). Moreover, plaintiff could have filed a bystander's report under Illinois Supreme Court Rule 323(c) (eff. Dec. 13, 2005) or an agreed statement of facts under Rule 323(d) (eff. Dec. 13, 2005). Any of the three could have provided the reasons for the trial court's ruling. Doubts that arise from the incompleteness of the record will be resolved against the appellant (*Foutch*, 99 Ill. 2d at 392).

¶ 50 That said, the record contains undisputed evidence indicating that the circuit court of Cook County did not abuse its discretion in transferring the action to Kane County. When Jaclyn

filed the original complaint in Cook County, the forum was neither her residence nor the site of the alleged medical negligence. A plaintiff's right to select the forum is substantial, and unless the factors weigh strongly in favor of transfer or dismissal, the plaintiff's choice of forum should rarely be disturbed. *Fennell*, 2012 IL 113812, ¶ 18. However, the plaintiff's choice is not entitled to the same weight in all cases. When the plaintiff chooses his home forum or the site of the accident or injury, the choice of forum is most likely convenient. *Fennell*, 2012 IL 113812, ¶ 18. When the plaintiff is foreign to the chosen forum and when the action giving rise to the litigation did not occur in the chosen forum, the plaintiff's choice of forum is accorded less deference. *Fennell*, 2012 IL 113812, ¶ 18; see also *Langenhorst v. Norfolk Southern Co.*, 219 Ill. 2d 430, 442-43 (2006) ("the plaintiff's interest in choosing the forum receives somewhat less deference when neither the plaintiff's residence nor the site of the accident or injury is located in the chosen forum" (internal quotation marks omitted)). Plaintiff argues that the transfer was an abuse of discretion because plaintiff was denied its choice of venue. However, when she filed the original complaint, Jaclyn resided in Kane County, which was also the site of the incident. Because Jaclyn was foreign to the chosen forum and because the action giving rise to the litigation did not occur there, her choice of forum is accorded less deference.

¶ 51    Furthermore, the undisputed evidence related to the private factors favored the transfer under the doctrine of *forum non conveniens*. Sherman Hospital was located in Kane County. The only fact witness identified by Jaclyn was also a resident of Kane County. Jaclyn identified 23 other potential witnesses who cared for Gianna, but she did not provide home addresses or affidavits of convenience for any of those treaters. Furthermore, those potential witnesses treated Gianna long after her delivery, which was the focal point of the case and had occurred at

Sherman Hospital in Kane County. See *Kahn v. Enterprise Rent-A-Car Co.*, 355 Ill. App. 3d 13, 26 (2004) (location of subsequent treatment is not a factor that favors transfer).

¶ 52 Although Dr. Korzen resided in Cook County, her residence was closer to the courthouse in Kane County than to the courthouse in Cook County. Defendants identified seven witnesses who participated in Gianna's care: four were residents of Kane County, three were residents of McHenry County, and all worked in Kane County. Five of defendants' witnesses provided affidavits stating that Kane County was a more convenient forum. Proceeding in Kane County allowed more convenient access to the evidence and made the attendance of witnesses easier.

¶ 53 The public-interest factors weighed even more strongly in favor of the transfer. According to the relevant statistics available at the time of the transfer motion, the circuit court of Kane County disposed of 2,939 cases in 2005, while the circuit court of Cook County disposed of 218,868. Besides the relative congestion in Cook County, the transfer order was supported by the interest of Kane County citizens in evaluating medical negligence claims against Kane County treaters at a Kane County hospital.

¶ 54 Plaintiff argues for reversal of the transfer order on the ground that Kane County courts are "hostile" to personal-injury plaintiffs. Regardless of the accuracy of plaintiff's assertion, the *forum non conveniens* doctrine aims to prevent just the kind of forum shopping that plaintiff advocates. Courts have never favored forum shopping. Decent judicial administration cannot tolerate forum shopping as a persuasive or even legitimate reason for burdening communities with litigation that arose elsewhere and should, in all justice, be tried there. Indeed, a concern animating our *forum non conveniens* jurisprudence is curtailing forum shopping by plaintiffs. *Fennell*, 2012 IL 113812, ¶ 19. Therefore, we determine that the circuit court of Cook County did not abuse its discretion in granting defendants' motion to transfer the action to Kane County.

¶ 55                              D. Settlement

¶ 56    The central issue in this appeal is whether the settlement was in Gianna's best interest. Plaintiff argues that approving the settlement over its objection was an abuse of discretion in that (1) the guardian *ad litem*'s appointment was improper because Josefa had not been removed as the guardian of Gianna's person and (2) the settlement terms were unreasonable. Defendants respond that the appointment was not an abuse of discretion and that plaintiff expressly waived any objection to the appointment. Dr. Korzen alternatively argues that this court lacks jurisdiction to review the appointment. Defendants also argue that, because they denied any liability and had a good chance of prevailing at trial, the settlement was in Gianna's best interest.

¶ 57                          1. Guardian *Ad Litem*

¶ 58    Plaintiff argues that the guardian *ad litem* should not have been appointed and allowed to recommend the settlement, because Josefa had not been removed as guardian of Gianna's person. We reject Dr. Korzen's assertion that we lack jurisdiction to review the appointment. Dr. Korzen contends that under Illinois Supreme Court Rule 304(b)(1) (eff. Feb. 26, 2010), which provides for the appeal of any "judgment or order entered in the administration of an estate, guardianship, or similar proceeding which finally determines a right or status of a party," the order appointing the guardian *ad litem* finally determined the right or status of a party. Because plaintiff failed to appeal within 30 days of the order's entry, Dr. Korzen concludes that this court does not have jurisdiction to entertain this argument. The appellate court considered and rejected the same argument in *In re Estate of Nelson*, 250 Ill. App. 3d 282 (1993). Noting that not every order entered in an estate proceeding must be immediately appealed under Rule 304(b)(1), the court held that "[a]n order does not finally determine the right or status of a party when it contemplates future action." *Nelson*, 250 Ill. App. 3d at 285. Like in *Nelson*, the

guardian *ad litem* was appointed for the purposes of investigation and submission of a report to be considered by the trial court. Thus, "[t]he order appointing the guardian *ad litem* did not finally determine the right or status of any party and contemplated future action. As a result, the order was not appealable under Rule 304(b)(1) and [the] failure to appeal from that order does not bar [an] attack on the order at this time." *Nelson*, 250 Ill. App. 3d at 285. Dr. Korzen's failure to cite *Nelson*, which is directly on point, is puzzling at best.

¶ 59    Regardless of Dr. Korzen's meritless jurisdictional argument, we conclude that the appointment was not an abuse of discretion. First, plaintiff expressly waived any objection to the appointment before Konicek presented his recommendation in favor of the settlement. Plaintiff filed an objection to the appointment on June 23, 2014, which was after Konicek recommended the settlement on June 5, 2014. Plaintiff challenged the appointment only after he recommended a settlement that plaintiff had rejected, which indicates that plaintiff objected not to the appointment, but to the recommendation.

¶ 60    Second, the appointment and Konicek's authority to recommend the settlement are supported by *Ott v. Little Company of Mary Hospital*, 273 Ill. App. 3d 563 (1995). Like this case, *Ott* was a minor's medical malpractice action where the family objected to a settlement agreement. In *Ott*, where the parents were the co-guardians of the minor's estate, the trial court ruled, " 'This case is settled for two million dollars according to a revised structured settlement, which I find satisfactory, and *a guardian ad litem will be appointed in place of the father to accept the settlement.*' " (Emphasis added.) *Ott*, 273 Ill. App. 3d at 568. The parents maintained their position and refused to accept the defendants' $2 million settlement offer. The trial court subsequently accepted and approved the report of the guardian *ad litem*; found that the recommendations were in the best interest of the minor; increased the settlement amount to

$2,091,782; and ordered the guardian *ad litem* to execute all necessary documents to settle the case. The court found that the settlement was fair and reasonable and the case was dismissed. The parents appealed and argued that the settlement dismissal order was improper where the trial court: (1) coerced the settlement, thereby depriving the plaintiffs of their right to trial; (2) improperly removed control of the minor's case from her parents/guardians by appointing a guardian *ad litem*; (3) engaged in extrajudicial communication with the guardian *ad litem*; and (4) approved a settlement amount that was arbitrary and wholly inadequate. The appellate court affirmed the trial court. *Ott* stands for the proposition that "when the court believes settlement to be in the minor's best interest, the court may order a prior-appointed guardian or conservator to effectuate settlement [citation]; *and if that person refuses*, may appoint a guardian *ad litem* to settle the case on the minor's behalf." (Emphasis added.) *Ott*, 273 Ill. App. 3d at 571.

¶ 61    Josefa argues that *Ott* requires removal of the minor's guardian before a guardian *ad litem* may be appointed to approve a settlement. Josefa concludes that she retained authority to reject the settlement because she never was removed as guardian of Gianna's person. Even assuming the dubious proposition that, as guardian of Gianna's person and not the estate, Josefa had standing to reject defendants' offer, *Ott* does not require a plenary guardian to be removed before a settlement may be approved. Although it is true that the father in *Ott* was replaced by the guardian *ad litem*, the substitution was for the limited purpose of facilitating acceptance of the settlement on the minor's behalf. In fact, the unpublished portion of the opinion reveals that the trial court clarified that the father's guardianship was never revoked. *Ott* authorized the trial court in this case to appoint Konicek as guardian *ad litem* to make a recommendation regarding the settlement offer, and the trial court was not required to terminate Josefa's guardianship in order to approve the settlement.

¶ 62 Josefa cites *Cushing v. Greyhound Lines, Inc.*, 2012 IL App (1st) 100768, and *Will v. Northwestern University*, 378 Ill. App. 3d 280 (2007), in support of her argument that the trial court could not approve the settlement without removing her as guardian. However, Josefa does not present a coherent argument regarding how those cases apply to the present action, why *Ott* does not control, or why the guardian of the person has any right to object to the settlement.

¶ 63                                    2. Terms

¶ 64 Dr. Korzen argues that plaintiff has forfeited review of the dismissal order because it has failed to argue that the trial court abused its discretion in dismissing the case pursuant to the settlement. However, plaintiff's notice of appeal specifically cites the dismissal order, and plaintiff has consistently argued that the settlement is inadequate, against Gianna's best interest, and an abuse of discretion. Plaintiff has preserved the issue of the adequacy of the settlement, and we reject Dr. Korzen's specious forfeiture argument, accordingly.

¶ 65 In the trial court and on appeal, plaintiff has alluded to a planned distribution of the settlement that they call unfair. We glean from counsel's comments in the record that first he would take his fees and costs and the family would take $150,000 for improvements to their home. Second, defendants' remaining payment or payments would be placed in a special-needs trust. Third, the State would continue to pay for Gianna's care at Misericordia Home but would place a lien on the trust. Finally, upon Gianna's passing, the State's lien would be paid and Gianna's family would receive the remainder as an inheritance. Plaintiff has repeatedly argued that the settlement is in the best interest of the State and defendants, and not Gianna. However, its argument is undeveloped and potentially motivated by financial interests unrelated to Gianna's care. The parties have failed to cite anything in the record resembling a court-approved method of distributing the settlement, which, for obvious reasons, hinders our review.

¶ 66    At the April 25, 2014, hearing, the trial court commented on the need for documentation of the proposed distribution:

> "Okay. This is what we're going to do. This case is scheduled for trial on Monday. I am going to strike it off the trial calendar, but *** I'm not accepting the recommendation as an order, that's what we're going to do.

> I'm going to give you an opportunity to take a look at the liens. I think there needs to be—I thought I asked for yesterday some financial information from Casey as far as different scenarios, that should be shared with the [guardian *ad litem*], I don't really need to look at that.

> I think also, [plaintiff's counsel], your costs and potential fees needs [*sic*] to be discussed as to—because before the Court would accept the full recommendation of the [guardian *ad litem*], I need to look at what the bottom line dollars are.

> * * *

> What I'd like to do is have in the next 10 days to two weeks another pretrial conference so that we can get a handle on the liens and then have a document that would show what the bottom line distributions would be, which would also—at some point [plaintiff's counsel] you're going to have to make a representation to the Court as to what your fees would be under that scenario."

¶ 67    The parties have not cited to the record for any evidence of the State's lien or the ultimate distribution of the settlement. Considering that the confidentiality of the settlement terms was a hotly contested issue throughout the proceedings, it is entirely possible that a formal distribution document was prepared by the parties and approved by the court, but omitted from the record. Aside from the undisputed $3 million settlement amount, we can only speculate as to what the

other settlement terms might be. Konicek's report contains a notation that plaintiff's counsel had told him that the State would reduce its lien and accept $383,000 for the cost of Gianna's care. However, there is no documentary evidence to substantiate the claim, and it is unclear how much care the $383,000 was expected to cover. Without a more complete record, we have no way of knowing the amount of plaintiff's counsel's fees, the value of the State's lien at the time of settlement, how the lien was expected to increase over Gianna's lifetime, or whether the State had made any assurances that it would continue paying for her care. We construe these important deficiencies in the record against plaintiff. See *Foutch*, 99 Ill. 2d at 391-92 (the appellant bears the burden of presenting a sufficiently complete record any deficiencies in the record are construed against the appellant, and in the absence of a complete record it will be presumed that the lower court's ruling conformed with the law and had a sufficient factual basis).

¶ 68    What we do know is that Gianna is severely handicapped and residing at Misericordia Home. Plaintiff has never alleged that this placement is not in Gianna's best interest or that she would be better served elsewhere. At the time of settlement, the State was paying the entire cost of her care, with an expectation of reimbursement from the settlement proceeds, but plaintiff has never alleged that the $3 million would not cover the cost of Gianna's care. Plaintiff claims that the State's lien is causing Gianna to recover nothing, but, while the assertion carries some superficial appeal, the award is for Gianna, not her family or heirs. Any award in excess of her needs would be a windfall for her family members, who have filed no claims against defendants. Plaintiff does not allege that Gianna's needs are not being met. Moreover, the trial court set aside $150,000 for improving the family home to facilitate Gianna's visits.

¶ 69    The trial court appointed Konicek as guardian *ad litem*, and he recommended accepting the $3 million settlement offer. Plaintiff's counsel repeatedly remarked in the trial court that

Konicek was highly qualified to render an opinion. Konicek reviewed the redacted pretrial memoranda from defendants, the memorandum submitted by plaintiff, and the depositions of Dr. Korzen, the nurses, and the parties' experts. He also reviewed the fetal monitoring strips, researched the issues of causation and damages, evaluated Dr. Korzen's conduct during labor and delivery, met with plaintiff's counsel several times, and reviewed the report of plaintiff's damages expert.

¶ 70 Konicek explained that plaintiff's likelihood of success at trial was an important factor affecting his recommendation. He pointed out that Dr. Korzen had stated in her deposition that, although she did not read the fetal monitoring strips until after the incident, she would have delivered Gianna the same way had she reviewed them contemporaneously. Konicek concluded that Sherman Hospital could potentially be found not liable because, if Dr. Korzen believed that an emergency caesarian procedure was not necessary, anything the nurses did or did not do would not have proximately caused the injuries. Konicek opined that, under these facts, defendants would prevail at trial "more often than not," and plaintiff would receive nothing. Konicek concluded that a $3 million settlement was fair because Gianna's likelihood of success at trial was low. Konicek also agreed that the funds should be placed in the special-needs trust.

¶ 71 The trial court was in the best position to weigh Gianna's needs against the likely outcome at trial. Plaintiff asserts that the $3 million settlement is inadequate because plaintiff alleges more than $22.5 million in damages, but the court accepted Konicek's recommendation and approved the settlement after accounting for the substantial risk that plaintiff would recover nothing at trial.

¶ 72 Plaintiff relies heavily on *CSC v. United States*, No. 10-910-DRH, an unpublished federal district court case from the Southern District of Illinois. Plaintiff argues that *CSC*, also a medical

negligence case involving HIE-related brain injuries suffered at birth, compels rejection of the settlement in this case. Following a full bench trial, the federal district court awarded the minor more than $28 million in damages after concluding that he suffered a hypoxic-ischemic brain injury and that there was no credible evidence or reasonable inference that the injury was from any other cause, such as infection, blood disorder, or genetic disorder. In contrast, this action never went to trial and the proximate-cause issues regarding the hospital are very much in dispute. Plaintiff's reliance on *CSC* is misplaced. Based upon the available record of the totality of the circumstances presented to the trial court, we conclude that the court did not abuse its discretion in determining that the settlement was in Gianna's best interest. See *Ott*, 273 Ill. App. 3d at 574.

¶ 73                              E. Confidentiality of Pretrial Memoranda

¶ 74     Plaintiff also argues that the settlement process was "tainted by unwarranted confidentiality" in that defendants submitted certain information about the case to the trial court but withheld it from plaintiff. Defendants deny any impropriety in the negotiations, and Dr. Korzen also contends that plaintiff has not preserved its argument regarding confidentiality.

¶ 75     As part of the settlement negotiations, the trial court solicited memoranda from the parties summarizing their trial strategies and opposing theories of the case. Defendants submitted memoranda that were neither placed in the court file nor tendered to plaintiff's counsel. Alarmed that defendants did not make their trial tactics public record, plaintiff's counsel demanded full disclosure. Defendants then presented redacted versions of their memoranda, which were spread of record.

¶ 76     Plaintiff's argument that the negotiations were "tainted" fails for two reasons. First, plaintiff agreed to the *ex parte* settlement discussions and actually participated in *ex parte*

conferences with the trial court and the guardian *ad litem*. Plaintiff cites to no agreement among the parties that all written submissions would be filed. The material in defendants' redacted memoranda is no different from any oral *ex parte* communication simply because it was reduced to writing, and thus it may be treated as any other *ex parte* communication. Plaintiff argues that, because defendants gave the unredacted documents to the trial judge, they must be considered "filed" and made public as part of the record. Giving credence to plaintiff's artificial distinction would lead to the absurd result that routine *ex parte* settlement communications containing confidential information must be made orally, which would be impractical in many cases.

¶ 77    Second, plaintiff argues that the unredacted versions of defendants' memoranda carried undue weight. However, the guardian *ad litem* made his independent recommendation of settlement based on his review of the redacted versions of the memoranda. Plaintiff's assertions that it was prejudiced by defendants' communications with the trial court are not supported by the record.

¶ 78                              F. Discovery

¶ 79    Plaintiff also argues that Sherman Hospital violated certain discovery rules and federal HIPPA regulations. Specifically, plaintiff contends that Sherman Hospital improperly obtained placental slides and turned them over to defendants' medical expert for review. Plaintiff ultimately obtained the slides and submitted them to its own expert. Defendants deny the violations.

¶ 80    On April 16, 2014, plaintiff moved to suppress defendants' expert opinion regarding the slides or, alternatively, for time to prepare and present its own expert opinion. At the April 25, 2014, hearing, plaintiff's counsel asked to delay the guardian *ad litem*'s report while plaintiff's expert prepared a report on the slides. Plaintiff did not ask for a ruling on the motion to suppress

for alleged discovery violations. The trial court denied an extension and allowed the guardian *ad litem* to make his recommendation orally, before filing a written report. However, the court commented, "We're going to, over objection, allow the recommendation. And I want you to also recognize, counsel, that just because he recommends something doesn't mean that the court has to do that, and I have other options here." The settlement negotiations pressed forward, apparently without a ruling on the motion to suppress.

¶ 81     Without a ruling on the suppression motion, this court has nothing to review regarding defendants' alleged discovery violations. We note that Dr. Korzen argues that this court lacks jurisdiction to review defendants' alleged discovery violations, but the deficiency is not jurisdictional but rather a matter of procedural default from plaintiff's failure to obtain a ruling on its motion.

¶ 82     Plaintiff also argues that the court erred in declining an extension for time to prepare and present to the guardian *ad litem* an expert opinion regarding the placental slides. Plaintiff does not explain how it was prejudiced by the ruling. Plaintiff's assertion is speculative, as it does not cite to any report in the record where its expert opined on the slides. If plaintiff's expert had, in fact, prepared a report, plaintiff could have at least submitted it in rebuttal to the judge, who expressly stated that he was not bound by the guardian *ad litem*'s recommendation and would consider other information.

¶ 83                                III. CONCLUSION

¶ 84     For the reasons stated, we affirm the orders of the circuit courts of Cook County and Kane County.

¶ 85     Affirmed.